CAMILLA GRUBER, by her next friend S. E. F. GRUBER v. THE WASH-
INGTON AND JAMESVILLE RAILROAD COMPANY.

*Appeal Bond— Waiver of Justification of—Corporations, Torts
of—Ultra Vires—Negligence.*

1. Where the case on appeal, made out by the presiding judge, uses the words
   "Bond fixed at $25, bond given," it was held a waiver of the statutory require-
   ment that the surety to the undertaking on appeal must justify.

2. Where the approval of an unjustified bond is the act of the clerk, there is no
   waiver, unless the appellee is present, or afterwards assents.

3. Where the owners of a steamboat provided a pass-way which was exposed to
   escaping steam, and a passenger was injured in consequence by the escaping
   steam; *Held* that the owners were liable.

4. *It seems*, that where by its charter, a corporation was empowered to cut and
   manufacture lumber and to ship the same to market, it can, in providing
   means of transportation for its own products, as incidental to its own busi-
   ness, carry the goods of others and passengers.

5. It is no defence to an action of tort, that the tort complained of resulted from
   an act which was *ultra vires*. So, where a corporation undertook to carry
   passengers, one of whom was injured by the negligence of the corporation,
   it was immaterial to inquire in an action for damages on account of such neg-
   ligence, whether the corporation had the power under its charter to carry
   passengers, or not.

(*Hancock* v. *Bramlett*, 85 N. C., 393; *Harshaw* v. *McDowell*, 89 N. C., 181, cited and
approved. *McMillan* v. *Nye*, 90 N. C., 11, distinguished).

CIVIL ACTION tried at Spring Term, 1883, of MARTIN Superior Court, before *Shepherd, J.*

The appellant, a corporation formed under an act of the General Assembly for the purpose of cutting and forwarding to market timber growing upon lands in certain specified counties, and with authority to construct and operate a railroad through said lands between the towns of Washington and Jamesville on the Roanoke river, in furtherance of the objects of its organization had employed steamers to run, as common carriers of persons and freight, between its last named terminus and the town of Elizabeth City, touching at Edenton on their way. In October, 1881, the plaintiff, an infant of tender years, with her parents and under their care, took passage from Elizabeth City to Edenton on the Juniata, one of the two steamers constituting the line. The boat arrived at Edenton, and, when the gang-way plank to the wharf was announced clear for passengers to go out, the plaintiff, passing along the way to the wharf, was struck by a jet of steam or hot water issuing with great force from the condenser in the engine-room through an unclosed door, and falling upon the gang-way where the plaintiff and others were, from which she was scalded and badly injured. The action is to recover damages in compensation therefor.

Several issues were submitted to the jury which, omitting needless verbiage, with the responses, so far as they pertain to the appellant's liability, were as follows:

I. Was appellant, the railroad company, the proprietor of the steamer on which the injury occurred, and was she engaged in conveying passengers and freight between Jamesville and Elizabeth City? Answer—Yes.

II. Did the appellant receive the plaintiff as a passenger on said boat at Elizabeth City for conveying to Edenton? Answer—Yes.

III. Did the said company so negligently and unskillfully conduct themselves in the management of said boat as to injure

the person of the plaintiff by the escaping steam or water? Answer—Yes.

IV. Did the plaintiff contribute to the injury sustained thereby? Answer—No.

The answer to the other issue was but in an assessment of damages.

The only exceptions, shown by the record to have been taken, were to the refusal of the court to give these instructions:

I. If, as the evidence discloses, the injury was caused by defective machinery and not by the negligence of the agents and officers of the company, the plaintiff was not entitled to recover, and that,

II. Taking the facts to be as testified to by the witnesses, the company had incurred no liability to the plaintiff.

There was judgment for the plaintiff, and the defendant appealed.

The defendant moved in the Supreme Court to dismiss the appeal on the ground that the undertaking was defective.

*Mr. George H. Brown, Jr.,* for the plaintiff.
*Mr. James E. Moore,* for the defendant.

SMITH, C. J., after stating the above: The motion to dismiss the appeal for want of a justification of the sufficiency of the sureties to the undertaking filed must be denied.

The case settled by the presiding judge with consent of parties on September 14th, 1883, and bearing his signature, contains these words:

Judgment—appeal by railroad company—bond fixed at twenty-five dollars—*bond given*—notice waived—by consent defendant given 30 days to serve statement of case.

The undertaking had been executed early in July preceding, and consequently has been accepted in its present form. We interpret the language of the judge, as importing that the undertaking was proposed to be entered into with the named sureties in court, and no objection to their sufficiency then made.

The subsequent execution of the instrument in accordance with the appellant's offer, and the acquiescence of the appellee therein, must be deemed a waiver of the statutory requirements in this regard.

In *Hancock* v. *Bramlett*, 85 N. C., 393, the case made out by the judge contained words essentially the same, "filed and approved," and were held to indicate a tender and acceptance in open court to which the appellee, having then made no objection, could not be heard to make it in this court.

To the same effect is *Harshaw* v. *McDowell*, 89 N. C., 181.

The ruling, in *McMillan* v. *Nye*, 90 N. C., 11, is not repugnant to these cases, since the filing and approving is there the act of the clerk and appears in his certificate, it not being shown that the appellee was present or ever assented.

It is to be observed that the instructions asked, were entirely inappropriate in the form of directions to the jury, for they were not pertinent to a single inquiry before them. The jury were to find the facts in response to the several issues, and not the law arising upon the findings. It was the province of the court to determine, when the facts were thus ascertained, whether the company was responsible for the wrong done, or, in other words, whether the plaintiff was entitled to judgment for the damages she had sustained.

But assuming the intent of the prayer to have been to present to the court the alleged repugnancy of the proofs to the averments in the complaint, as to the manner in which the injury was inflicted, the refusal of the court was entirely correct.

If the machinery was defective and unsafe, it is not less true, that there was that want of watchfulness and care on the part of the employés, by which the injury might have been avoided. The steam was seen previously to have issued; a pass-way out was provided which was exposed to it, and the door was left open, through which it was permitted to pass and smite those who were there passing. If this be so, there was great culpability on the

part of the employés and the damage directly resulted from their carelessness and inattention in not providing against it.

The second instruction points to no specifically assigned error and to give it any significance, we must suppose it was predicated upon the proposition that the company's undertaking the business of common carriers by water is outside the scope of its corporate powers—*ultra vires*—so that in that capacity, it would not render itself liable to persons or for property conveyed in its steamers.

It is somewhat questionable whether there has been in this respect such a departure from the purpose of the organization, as to make the establishment of the line of water communication as a further means of reaching a market, an exercise of power not within the operation of the principle intended to be expressed in those words.

By the words of the charter the company was authorized "to cut and manufacture lumber and *ship the same to market*," (Acts 1868–'9, chapter 37), and in providing this means of transportation for its own forest productions to a market it may, perhaps as incidental to its own business, carry the goods of others, and passengers.

In *South Wales Railway Company* v. *Redmond*, 10 C. B. (N. S.), 675, a contract made by a company whose railway terminated at Milford Haven, with another for steam-vessels to run from that point to Ireland, was held not to be *ultra vires* and that the defendant having provided an unseaworthy vessel was liable in damages, Erle, C. J., remarking, "so far from a contract by this company to facilitate the forwarding of passengers and goods to Ireland being illegal, I rather gather that the legislature contemplated and intended that a railway terminating at Milford Haven should forward traffic to and from Ireland, and therefore this contract would be entirely within the scope and object of the company's incorporation and extension."

But if it is conceded that the line of steamers was not within the contemplation of the charter and was unwarranted by it, it by no means follows that upon the wrongful assumption of the

business of common carriers, it can be conducted without incurring the obligations for safe transportation which belong to the exercise of those functions. It can be no defence to the company which undertakes to receive and carry persons for hire, that they had no legal right so to do, when charged with responsibility for wrongs coming to those who commit their personal safety to the agents of the company, and who suffer from their negligence and misconduct.

"Herein" remarks a late writer, "consists a great distinction between *tortious* and *contractual liability* for acts *ultra vires*. It is no defence to legal proceedings in tort, that the torts were *ultra vires*. If the torts have been done by the corporation, or by their direction, they are liable for the result, however much in excess of their powers, such torts may be." *Green's Brice's Ultra Vires,* 265.

In *Merchants' Bank* v. *State Bank,* 10 Wall 604 (645), the court say: "Corporations are liable for every wrong of which they are guilty and in such cases the doctrine of *ultra vires* has no application."

"A corporation will be held to respond in a civil action at the suit of an injured party for every grade and description of forcible, malicious or negligent tort or wrong which it commits, however foreign to its nature or beyond its granted powers, the wrongful transaction or act may be." *Green's Brice's Ultra Vires,* 241, note; *Railroad Co.* v. *Schuyler,* 34 N. Y., 30.

It is needless to pursue the subject further. The instruction was properly withheld and the proposition not acted on.

There is no error and the judgment is affirmed.

No error.                       Affirmed.