ELIAS MARLOWE v. DRURY BLAND.

(Filed 20 December, 1910.)

1. **Master and Servant—Tortious Act—Respondeat Superior—Test—Employment.**

  Upon the question of the responsibility of the master for the acts of the servant, by reason of implied authority, the test is whether the tortious act complained of was committed in the course of the servant's employment and within its scope.

**2. Same—Tortious Acts—Authority Implied—Evidence.**

When the master has given direction to his servant, a "hired man," to cut and pile cornstalks in his field, which was done by the servant, and then, without direction from the master, and in his absence, he set fire to the stalks, which caused sparks to be carried by the wind, which set fire to and destroyed plaintiff's property, the doctrine of *respondeat superior* does not apply, the thing the master ordered his servant to do being harmless in itself, and there being no express or implied authority given the servant to burn the stalks, which alone caused the damages complained of.

APPEAL from *Webb, J.,* at February Term, 1910, of RUTHERFORD.

Civil action to recover damages for negligently allowing fire to get out in a neighbor's woods and thereby causing damage, etc. There was evidence tending to show that defendant had a hired man, named Major Melton, and, on 22 March, 1907, he directed Melton to cut and pile some cornstalks in a 4-acre field on defendant's place, and after giving these directions went off with a load of lumber; that Melton went at the work he was given to do; cut and piled the stalks, as directed, and then proceeded to set fire to them; that there was wind blowing at the time, and the fire having been set at a point about 10 steps from the woods, sparks were blown by the wind over into the woods of plaintiff, causing a fire and doing $200 or $300 of damage.

Major Melton, the hired man, being examined as a witness for plaintiff, among other things, testified: "Bland sent me to the field to cut and pile the stalks. . . ." On his cross-examination the witness stated: "The wind was not blowing at the time I piled up the stalks. I did not tell any one I was going to burn the stalks, I just set the stalks on fire. No wind when I set fire to the stalks. Defendant didn't tell me to set them afire. I just thought, while I was out there, I would burn them. I tried to stop the fire, but couldn't. He turned me off because I set the fire out."

Defendant offered no evidence. At the close of the testimony, on motion duly made, there was judgment of nonsuit, and plaintiff excepted and appealed.

*McBrayer, McBrayer & McRorie for plaintiff.*
*No counsel contra.*

HOKE, J., after stating the case: We are of opinion that, on the facts of this case, the judgment of nonsuit should be affirmed. In *Sawyer v. R. R.,* 142 N. C., 1, that being an action for slander by reason of certain defamatory words uttered by the superintendent of the road, in conversation with an applicant for employment, after he had told such applicant that the company did not wish to employ him, it was held, generally, in reference to the maxim *respondeat superior:*

"2. Where the question of fixing responsibility on corporations by reason of the tortious acts of their servants depends exclusively upon the relationship of master and servant, the test of responsibility is whether the injury was committed by authority of the master, expressly conferred or fairly implied from the nature of the employment or the duties incident to it.

"3. Where the act is not clearly within the scope of the servant's employment or incident to his duties, but there is evidence tending to establish that fact, the question may be properly referred to a jury to determine whether the tortious act was authorized."

And the Court, in the opinion, sustaining a judgment of nonsuit, said: "The test of responsibility established by the better considered authorities being 'whether the injury was committed by the authority of the master, expressly conferred or fairly implied from the nature of the employment or the duties incident to it,' when such authority is express, the matter is usually free from difficulty; but the authority may be implied, and, on a given state of facts admitted or established, frequently is conclusively implied, and responsibility imputed as a matter of law." And on the same subject quotes with approval from Wood on Master and Servant, sec. 279, as follows: "The question usually presented is whether, as a matter of fact or of law, the injury was received under such circumstances that, under the employment, the master can be said to have authorized the act; for if he did not, either in fact or in law, he cannot be made chargeable for its consequences, because, not hav-

ing been done under authority from him, express or implied, it can in no sense be said to be his act, and the maxim previously referred to does not apply. The test of liability, in all cases, depends upon the question whether the injury was committed by the authority of the master, expressly conferred or fairly implied from the nature of the employment and the duties incident to it." And further, section 307 : "The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done, by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders." And in *Roberts v. R. R.,* 143 N. C., 176-179, being an action against a railroad company for an assault and battery committed by one employee on another, the same author, section 288, is quoted as follows : "An employer who leaves to an employee to do certain acts for him according to the employee's judgment and discretion is answerable for the manner or occasion of doing it, provided it is done *bona fide* and within the scope of the servant's express or implied authority, and not from mere caprice or wantonness and wholly outside of the duties conferred upon him." A perusal of these and other authorities on the subject will disclose that on the question of responsibility of the master, by reason of implied authority, the test is whether the tortious act complained of was committed in the course of the servant's employment and within its scope. *Jackson v. Tel. Co.,* 139 N. C., 347; *Daniel v. R. R.,* 136 N. C., 517; 26 Cyc., pp. 1528-1533; Jaggard on Torts, pp. 256-257. In the citation to Cyc., *supra,* p. 1533, and on this term, "scope of employment," it is said : "In determining whether a master is liable for the torts of his servants, the most difficult question is whether the particular act or omission of the servant causing the injury for which the master is sought to be held liable was committed within the scope of the servant's employment; and this question is in most cases one of fact to be de-

termined by the jury from the surrounding facts and circumstances. The terms "course of employment" and "scope of authority" are not susceptible of accurate definition. What acts are within the scope of the employment can be determined by no fixed rules, the authority from the master generally being gatherable from the surrounding circumstances. An act is within the scope of the servant's employment, where necessary to accomplish the purpose of his employment, and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. The purpose of the act rather than its method of performance is the test of the scope of employment. But the act cannot be said to be within the scope of the employment merely because done with intent to benefit or serve the master, not merely because the injuries complained of would not have been committed without the facilities afforded by the servant's relations to his master, nor because the servant supposed that he possessed authority to do the act in question." A correct application of these authorities and the principles upon which they rest to the facts presented will, in our opinion, sustain the action of the lower court in ordering a nonsuit.

As a general proposition, the duty of a hired man is to do what he is told, and in this instance he was directed to do a definite, specific thing, importing no menace to any one, and after completing the work that was given him to do, he goes on of his own motion and does something else—engages in an act which is not infrequently a source of danger to neighbors, and does it under circumstances amounting to a negligent wrong and causing substantial pecuniary injury.

Plaintiff did not rely on the inferences which might arise from the fact that his neighbor's hired man while engaged in clearing off a field, on a windy day, set fire to a pile of cornstalks near the plaintiff's woodland, from which it might be reasonably inferred that this negligence was within the scope of his employment, but his own proof goes further, and shows that the employee had no orders to burn these stalks, nor was he sent with general directions to clear off the field, involving some extent of discretion in his method, as in the citation from

Wood, approved in *Roberts' case, supra,* but he was directed to do this specific act, and the course and scope of his employment, in this instance, was to do as he was told. The distinction, we think, finds support in the cases above referred to in our own Reports of *Daniel v. R. R.* and *Jackson v. Tel. Co., supra.* In the first case, recovery was denied where an agent in charge of property of the principal, having reason to believe that some one had committed a theft, without being ordered to do so, caused the arrest of the suspected person, and it was held that the duty of caring for the property did not extend to punishing one who had injured or stolen it, and so the act was beyond the scope of the employment. In *Jackson's case,* an employee of a telegraph company in charge of hands who were placing poles for a new line caused the arrest and imprisonment of an obstructing landowner with the view and purpose of putting him out of the way until they could go through his land. There was no direction to do this on the part of the company, but it was held to have authorized the act because done in the course and scope of the employment.

There are numerous authorities which appear to conflict with the disposition that we make of the present appeal. Many of these, however, as pointed out in *Sawyer's case, supra,* can be distinguished and consistently upheld on the ground that the facts involved a breach of some independent duty that the employer directly owed to the injured person, and do not depend entirely on the relation of master and servant. As in case of injuries received by passengers on trains or in depots of common carriers or customers in a general store, they are there by invitation of the employer, and a duty exists directly between the parties; this is the view we think that the case of *Redding v. R. R.,* 3 S. C., 1, properly presents. True, the recovery there was sustained in a very learned opinion and made to rest chiefly on the ground of agency alone, but we doubt if on the facts appearing in that case the breach of duty owing directly from the employer to the injured person is not the stronger position. In other cases responsibility may be imputed and recovery sustained by reason of intrusting the employee with dangerous

154—10

implements and agencies, as in *Stewart's case,* 146 N. C., 47, or because the occupation is such as to not unnaturally import menace to outsiders, as in *Hunter's case,* 152 N. C., 682—a principle which forbids that the employer shall be excused even by the interposition of an independent contractor. Again, there are cases where the act complained of was done in furtherance of the work that the employee was given to do and in the course of its performance, as when an employee or numbers of them are sent to clear off a new ground or a railroad right of way; here the employer would be responsible for negligent acts done in furtherance of the work and during its continuance, though the precise method employed at the time might be against the express orders of the employer. The act comes clearly within the scope of the employment. Wood on Master and Servant puts the very case in section 285: "So a master was held liable for the acts of his servants employed to clear land for him in setting fires to burn the brush, and this even when the fires were built against his orders." And *Jackson v. Tel. Co., supra,* and *Wood v. Young,* 42 Ark., illustrates the same general principle. But where, as in this case, a hired man directed to do a definite, specific thing, entirely harmless in itself, and after completing this goes forward without instructions and without the knowledge of employer and does something else which imports a menace to outsiders, thus entirely changing the character of the work he was given to do and not embraced within the terms or meaning of the order—this, we think, can in no sense be considered as within the scope of the employment, and the doctrine of *respondeat superior* has no application.

The judgment of nonsuit will be

Affirmed.