D. E. KELLY v. THE NEWARK SHOE STORES COMPANY, M. SAMUELS AND COMPANY, INCORPORATED, AND F. L. REDFORD.

(Filed 4 November, 1925.)

1. **Employer and Employee—Master and Servant—Principal and Agent—"General Manager"—Criminal Law.**

   One employed as "general manager" of a local branch of a chain of stores operated in several towns, impliedly at least has the control thereof in his locality, with reference to its local employees, and his acts with respect to them are held to be those of the corporation he thus represents.

2. **Same—Torts—False Arrest—Respondeat Superior.**

   Where there is evidence that the local "general manager" has had an employee or salesman at his principal's store falsely arrested and imprisoned for the embezzlement of his employer's funds, it is sufficient to be submitted to the jury upon the issue of the employer's liability therefor in an action for damages.

3. **Same—Corporations.**

   A corporation is liable for the torts of its employees or servants committed in its behalf within the scope of their employment as in case of individuals.

4. **Indictment—Probable Cause—Criminal Law.**

   An indictment for embezzlement in the Superior Court is prima facie probable cause for its prosecution.

APPEAL by defendants from NEW HANOVER Superior Court. *Dunn, J.*

The plaintiff sued defendants, alleging that the defendants, Shoe Stores Company and M. Samuels Company, owned and operated a chain of shoe stores, with F. L. Redford, general manager in charge of the store in Wilmington, and that the plaintiff was employed as a salesman in the Wilmington store; and that in the Wilmington store, on Saturday, 2 July, 1921, Redford, the defendants' general manager, about eleven o'clock at night, in the presence of other people, locked the doors of the store and falsely and maliciously did: (a) charge the plaintiff with embezzlement of $10.00 in money belonging to said store; (b) unlawfully arrest and imprison the plaintiff by locking the doors of said building, and, removing the keys, did hold him under arrest; (c) procure a policeman and deliver the plaintiff to policeman, under arrest, and caused the plaintiff to be taken down front street in a patrol wagon in the presence of crowds, and a warrant to be procured, charging plaintiff with embezzlement, and from which, imprisonment in the city prison ensued; (d) that the said defendants did maliciously prosecute and cause the false imprisonment of plaintiff.

The defendant, M. Samuels and Company, denied the material allegations of the complaint, admitting that plaintiff was employed as a sales-

man in the Wilmington store. At the close of plaintiff's evidence, motion for judgment as of nonsuit was allowed and plaintiff appeals.

Plaintiff's evidence tended to show that plaintiff was experienced in the mercantile business, a man 47 years of age; had been employed by the defendant in the operation of its Wilmington store some three or four months. He was hired by the auditor and manager who came to Wilmington and opened up the store, one Murphy, who left the store in charge of the defendant, Redford, who was general manager of the company's business in this store, with the title of "General Manager"; that Murphy, who started the store hired the plaintiff and turned him over to Redford; that the help for the store was all employed when Redford came, except the cashier, Mr. Wooten's wife, who was employed by Redford; that Redford paid off the help; that plaintiff was receiving $12.00 per week and a commission of 5% on his sales of shoes and 10% on sales of findings; that Redford paid the salaries, but sent in a statement showing what the commissions were, and checks with employees' names on them were forwarded from headquarters and cashed by the local store. That after plaintiff had been working a little while, he quit, because his commission check was not showing up as it should, but was hired back by Redford; that when he left, the defendant gave him a letter of recommendation, and that he came back to work at the request of the defendant, through Redford; that on 2 July, 1921, his commission checks were not coming as plaintiff contended they ought to come; that Mrs. Wooten, the cashier, kept the commission tickets; that plaintiff and Wooten were the two salesmen; that Mr. Redford sold occasionally. When a pair of shoes was sold, the plaintiff put down the stock number, the size of the shoe, the number of the shoe and the cost, on the ticket, and the money was delivered to the cashier. The manager computed the tickets and figured up the commission. The salesmen did not handle the tickets or cash after delivering them to the cashier. That they were not giving plaintiff credit for the amount of stock he was selling; that he kept the account himself; that on 2 July, about 12 o'clock, plaintiff told Redford that he was going to quit that night for good and always; that Redford kept after him during the day to remain, and he refused; that plaintiff worked until about 10 or 10:30 that Saturday night, which was the regular time for an inventory; that while plaintiff was putting up the shoes that had been taken down, Redford went to the back door and locked it and snatched the key out, breaking the string, and locked the other door and took the key out. Plaintiff was putting up the shoes and Mr. and Mrs. Wooten were standing there and the plaintiff began to take the inventory when

Redford came up and said to him in the presence of others, "Kelly, you have stolen $10.00 of the company's money and you have it in your pocket and I want it." Plaintiff said, "I have not a penny of the company's money nor any one else's money but my own. Redford said that I did, and a controversy and fight started and Wooten ran in between us and stopped the fight and Mrs. Wooten was scared and I walked off to one side." In a few minutes the policeman came and the store was crowded with men and Redford said to the policeman: "This man has ten dollars of the company's money and I want you to take him and lock him up unless he gives it to us." The plaintiff said, "I have nothing except that which belongs to me." The street was full of people. The plaintiff was arrested by the policeman and brought out on the street before all the people, put in the "Black Maria" and carried to the police station. Redford was with plaintiff all the time. When we got to the police station he swore out a warrant charging the plaintiff with embezzlement of $10.00. Plaintiff was searched in Redford's presence and had on his person twenty-eight dollars and some few cents—two ten dollar bills, one five and three ones. This money was made up as follows: Two ten dollar bills and one five, from the Atkinson rent check for $25.00, the balance of $5.00 from a check cashed by the Newark Stores Co., after paying the dollar to the wash-woman, and some change for plaintiff's child to go to the moving pictures. The $25.00 check was identified, as well as the $5.00 check, both dated 1 July, 1921.

Redford remained with the plaintiff from the time he locked the doors until plaintiff was searched, not leaving him more than two feet at any time. Plaintiff was locked up in the city prison all night. He arranged bond next morning and got out about ten o'clock. Redford prosecuted the case before the recorder; that both he and Murphy, the auditor, sat with the prosecution at the trial; that the first case was *nol. prossed.* This warrant charged larceny of $10.00 in money, the property of F. L. Redford. As soon as plaintiff was released another warrant was sworn out and he was rearrested and this case was sent up to the Superior Court; that his arrest and imprisonment and trial were published in the newspapers; that he had never been in trouble before, and since that has been unable to get employment, except temporarily; that he suffered humiliation; that plaintiff was indicted in the Superior Court for embezzlement, was tried and acquitted by a jury verdict. Mr. and Mrs. Wooten were witnesses for the prosecution and they testified that he took some money; that Redford said they told him that he took it; and that plaintiff's general reputation was good.

Upon conclusion of plaintiff's evidence, the defendants, M. Samuels, Incorporated, and Newark Shoe Stores Company, moved for judgment as of nonsuit, which was allowed, and the plaintiff excepted and appealed.

*Weeks & Cox and Fowler & Crumpler for plaintiff.*
*Ruark & Campbell for defendants.*

VARSER, J. The plaintiff, the salesman of the defendants' Wilmington Shoe Store, was employed first by Murphy, who was called both auditor and manager, who travels around and gets each store into operating condition and installs the employees and then, evidently, performs the duties of auditor afterwards. The defendant, Redford, was employed by Murphy and given the title of "general manager" of the Wilmington store. Redford was in charge of the Wilmington store and employed the help, after the business was started off by Murphy. When the plaintiff became dissatisfied and quit, he was hired again by Redford and so was the cashier. There is ample evidence outside of the title of Redford that he was in the general charge of defendants' store. He computed and handled the commission accounts of each employee. As manager, or general manager, he was in general charge of the defendants' Wilmington store; had general supervision and control over this business in all respects. The term "manager," applied to an officer or representative of a corporation, implies the idea that the management of the affairs of the company has been committed to him with respect to the property and business under his charge. Consequently, his acts in and about the corporation's business, so committed to him, is within the scope of his authority. 5 Words and Phrases, 4319; *Sullivan v. Evans-Morris-Whitney Co.,* 54 Utah, 293. The designation "manager" implies general power, and permits a reasonable inference that he was invested with the general conduct and control of the defendants' business centered in and about their Wilmington store, and his acts are, when committed in the line of his duty and in the scope of his employment, those of the company. *Whipple v. Insurance Co.,* 222 N. Y., 39, 46; *Sanders v. Marble Co.,* 25 Wash., 475; *Taylor v. Granite State Provident Asso.,* 136 N. Y., 343; *Stewart v. Union Mutual Life Ins. Co.,* 155 N. Y., 257; *American Car & Foundry Co. v. Alexandria Water Co.,* 218 Pa. St., 542; *Commonwealth v. Johnson,* 144 Pa. St., 377; *Ives v. Insurance Co.,* 78 Hun., 32. The term "manager" implies the exercise of judgment and skill. *Roberts v. State,* 26 Fla., 360; *Ure v. Ure,* 185 Ill., 216; *Youngworth v. Jewell,* 15 Nev., 48; *Watson v. Cleveland,* 21 Conn., 541; Black's Law Dictionary, 2 ed., 752; *American Inv. Co., v. Cable Co.,* 60 S. E., 1037 (Ga.); *State v. Hemenover,* 188 Mo., 381.

The term "general manager" may imply still greater authority, and, although limited to the branch store at Wilmington, it still may imply the authority to act in emergencies, or generally, as the principal officer of the corporation in reference to the ordinary business and purposes of the corporation in the conduct of such store. *Mining Co. v. Refining Co.,* 16 Col., 118; *Kansas City v. Cullinan,* 65 Kansas, 68; *Railway Co., v. McVay,* 98 Ind., 391; *Gas Light Co., v. Lansden,* 172 U. S. 534; *Camcho v. Engraving Co.,* 37 N. Y., Supp., 725.

The difficulty in this case arises, not in determining whether the evidence, viewed in its most favorable light for the plaintiff tends to establish slander and false imprisonment, and false arrest and malicious prosecution, but in determining whether these acts of Redford were such as to invoke the rule of *respondeat superior.* This doctrine is based on the maxim *qui per alium facit per seipsum facere videtur.* Whether this maxim applies, with resultant liability to the defendant Samuels & Company, depends upon whether Redford's acts were done in the line of his duty, or within the scope of his employment. *Sawyer v. Gilmers,* 189 N. C., 7; *Cotton v. Fisheries Products Co.,* 177 N. C., 57; *S. v. Williams,* 186 N. C., 627; *Gallop v. Clark,* 188 N. C., 186; *Jackson v. Telegraph Co.,* 139 N. C., 348; *Pierce v. R. R.,* 124 N. C., 93; *Cook v. R. R.,* 128 N. C., 333. Liability does not flow from the employee's intent to benefit or serve the master, but it does flow from the acts of the servant or employee in attempting to do what he was employed to do, that is, the acts complained of must have been done in the line of his duty, and within the scope of his employment. *Butler v. Mfg. Co.,* 182 N. C., 547; *Daniel v. R. R.,* 136 N. C., 517; *Munick v. Durham,* 181 N. C., 188; *Clark v. Bland,* 181 N. C., 112; *Roberts v. R. R.,* 143 N. C., 176.

We conclude, therefore, that it was error on the part of the trial court in withdrawing this cause from the jury.

Plaintiff contends that he was maliciously prosecuted, falsely imprisoned and illegally assaulted and searched at Redford's instance after he was carried from the defendants' store under such circumstances as to impose liability on the defendant.

The indictment had in the Superior Court of New Hanover County is prima facie probable cause for the prosecution. *Stanford v. Grocery Co.,* 143 N. C., 419.

There is not sufficient evidence in the record for this Court to determine whether, as to the evidence transpiring after Redford and the plaintiff left the defendants' store, comes within the rules announced in *Minter v. Express Co.,* 153 N. C., 507; *Daniel v. R. R., supra; Allen v. R. R.,* L. R., 6 Q. B., 65, or under the rules announced, with reference to past offenses, in *Berry v. R. R.,* 155 N. C., 287; *Minter v. Express Co.,*

*supra; Dover v. Mfg. Co.,* 157 N. C., 324-327; *Cooper v. R. R.,* 165 N. C., 578, 582; *Butler v. Mfg. Co.,* 185 N. C., 250; 252.

If it shall appear that such acts, after leaving the store, were within the scope of Redford's employment and in his line of duty, or that such acts were authorized or ratified by the defendant, then the settled principles announced in *Sawyer v. R. R.,* 142 N. C., 1, 8; *Gallop v. Clark, supra; Jones v. R. R.,* 150 N. C., 473, 476; *Marlowe v. Bland,* 154 N. C., 140, 143, 145; *Sawyer v. Gilmers, supra,* would apply.

The defendant Samuels & Company obtains no exemption from liability for torts on account of its corporate capacity (*Hussey v. R. R.,* 98 N. C., 34; 2 Am. State Reports, 312; *Denver R. R. Co. v. Harris,* 122 U. S., 597), but it is liable for the acts of its servants and agents in the same degree as natural persons are liable for the acts of their servants and agents. Beach on Private Corporations, Par. 455; *Goodspeed v. Bank,* 22 Conn., 536; *Wachsmuth v. Bank,* 96 Mich., 426; *Evansville & Terre Haute Ry. Co. v. McKee,* 99 Ind., 519; *Redditt v. Mfg. Co.,* 124 N. C., 100; *Sawyer v. R. R., supra; Ange v. Woodmen,* 173 N. C., 33, 35; *Strickland v. Kress,* 183 N. C., 534, 537. This latter case marks with distinctive clearness the line of demarcation in the scope of employment of a manager of a store.

Viewing this case in its most favorable light for the plaintiff, we conclude that there is sufficient evidence to be submitted to the jury for them to determine whether, under proper instructions from the court, the arrest and search and imprisonment and prosecution which took place after the plaintiff left or was carried from defendants' store, was a continuation of the same tort committed by Redford within the store. *Berry v. R. R., supra; Jackson v. Telegraph Co., supra; Marlowe v. Bland, supra; Denver R. R. Co. v. Harris, supra.*

Therefore, to the end that there may be a new trial in accordance with this opinion, the judgment of nonsuit is

Reversed.