Plaintiff was a mail carrier on the line of the corporate defendant and defendant DeButts was its general manager.
In May, 1931, the corporate defendant petitioned the Corporation Commission of North Carolina to be allowed to discontinue certain passenger trains, then being operated by it. There were a number of hearings before the Commission and the plaintiff, as a citizen of Mount Airy, appeared and opposed the petition and gave testimony in behalf of the respondents.
At the time of the hearings the Corporation Commission was not vested with authority to authorize the discontinuance of passenger trains when the convenience and necessity of the public did not require the operation of such trains. At the 1933 session of the Legislature a bill expressly conferring this jurisdiction on the Commission was introduced. There were hearing and on this bill before the committee and plaintiff appeared and opposed it. The bill was enacted and ratified prior to the occurrences which are the subject matter of this action. So far as the record discloses, there were no other hearings before the Corporation Commission.
On the evening of 16 May, 1933, plaintiff went to the station of the corporate defendant to meet a friend and while waiting for the arrival of the train a controversy arose between him and the defendant DeButts and the plaintiff was abused, insulted and assaulted by said defendant. There was ample evidence to sustain the verdict against the defendant DeButts and he did not appeal.
The jury having found by its verdict that the defendant DeButts at the time of said assault was acting within the scope of his employment as general manager of the Atlantic and Yadkin Railway Company, judgment was entered against said defendant and the Atlantic and Yadkin Railway Company appealed.
The one question we need to discuss on this appeal is the liability of the appealing defendant on the judgment rendered *Page 122 
against the individual defendant. If DeButts was not acting within the scope of his employment and in furtherance of his master's business at the time of his assault upon the plaintiff, this question must be answered in the negative and the other exceptive assignments of error become immaterial.
The plaintiff described the setting of the assault in substance as follows:
"I was standing right near the mail wagon; others were present; I was waiting there for Mr. Brower. Someone said, in a humorous way, that perhaps the train had been discontinued. The defendant DeButts was present. Someone asked the question: `Do you think the trains will be taken off?' I replied that I did not think they would, because it was too important to the public from the standpoint of mail, express, and passenger service. About that time DeButts approached me and said: `Mr. Snow, when are you going to get your promotion?' I said: I am not going to get it. He said: `You said you were going to be made chief clerk; you said it, didn't you?' I said: Yes, I thought I was going to get it, but another man got it. He said: `Why didn't you get it ?' I said: Another man got it. He says: `I know why you didn't get it; you lied to the Corporation Commission; you lied to the Legislature.' I said: Mr. DeButts, there is no reason why we should have have any personal ill will toward each other. I have nothing against you. I did what I did simple because I thought it was my duty I presume you did the same. He replied: `You are a G — — d — — liar. You are interfering with my business. I am trying to save money for the company and it is none of your business. . . .'" The plaintiff then outlined the abusive language and conduct of the defendant DeButts, which amounted to an assault.
There is no hard and fast rule governing the application of the doctrine of respondeat superior. The application of the doctrine depends upon the facts in the case under consideration. There are, however, certain general rules established by the decisions of this and other courts which govern its application.
A principal is liable for the torts of his agent (1) when expressly authorized; (2) when committed within the scope of his employment and in furtherance of his master's business — when the act comes within his implied authority; (3) when ratified by the principal.
There is no contention in this case that the conduct of DeButts was expressly authorized, or that it was thereafter ratified by his employer. If the corporate defendant is liable at all, it is by reason of the fact that DeButts was acting within the line of his duty and exercising functions necessarily implied by the general nature of his employment — that is, he was acting within the range of his employment. *Page 123 
The principles requiring the application of the doctrine are variously expressed.
It is elementary that the principal is liable for the acts of his agent, whether malicious or negligent, and the master for similar acts of his servant, which result in injury to third persons, when the agent or servant is acting within the line of his duty and exercising the functions of his employment. Roberts v. R. R., 143 N.C. 176.
If the Wrongdoer, while acting in the range of his authority, does an act which injuries another, the principal or master is liable therefor without reference to whether the intent of the agent or servant was good or bad, innocent or malicious.
Liability exists as against the master for wrongful or negligent acts of his servant only when the agent is acting within the scope of his employment and is about his master's business, attempting to do what he was employed to do.
"A servant is acting in the course of his employment when he is engaged in that which he was employed to do, and is that at the time about his master's business. He is not acting in the course of his employment if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interruption of the course of employment as to suspend the master's responsibility, but if there is a total departure from the course of the master's business, the master is not longer answerable for the servant's conduct." Tiffany on Agency, page 270.
A principal is liable for assaults committed by its agent or servant only when the assault is committed while the agent or servant is about his master's business and acting within the range of his employment, unless his conduct was thereafter ratified by the principal.
On the other hand, there are pertinent decisions holding that the principal under certain conditions is not liable.
The principal is not liable when the agent is about his own business, or is acting beyond the scope and range of his employment. This is true irrespective of the intent of the agent.
A master is not responsible for the torts of his servant committed wholly for the servant's own purpose and in consummation of his personal desire. Linville v. Nissen, 162 N.C. 95; Roberts v. R. R., supra.
A master cannot be held liable for the unauthorized act of a servant on the ground that the servant did the act with the intent to benefit or serve the master. Daniel v. R. R., 136 N.C. 517; Marlowe v. Bland, 154 N.C. 140.
Nor is a master liable when his servant steps aside from the master's business to commit a wrong not connected with his employment. Marlowe v.Bland, supra; Dover v. Mfg. Co., 157 N.C. 324; Bucken v. R. R.,157 N.C. 443. *Page 124 
If an assault is committed by the servant, not as a means or for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness, or to gratify his personal animosity, or to carry out an independent purpose of his own, then the master is not liable. 39 C. J., page 1307; L.R.A., 1918 F, 534; 10 A.L.R., 1079; Jackson v. Scheiber,209 N.C. 441.
It is well established rule that the master is not responsible for the tort of hiss servant when done without his authority and not for the purpose of executing his orders or doing his work, but wholly for the servant's own purpose and in pursuit of his private and personal ends,Bucken v. R. R., supra; Linville v. Nissen, supra.
Ordinarily, the intent of the agent, or his purpose to promote the interest or protect the property of his principal, is not a determining factor.
It is immaterial that the employee intended by such act to secure a benefit for the employer. Limb v. Charles Stores Co., 201 N.C. 134. Liability of the principal, or the master, depends upon the motive of the agent, or the servant, such as his intent to benefit his employer or to protect his property, but upon the question whether in the performance of the act which gave rise to the injury the agent or the servant was at the time engaged in the service of his employer. Dickerson v. Refining Co.,201 N.C. 90. It is not sufficient that the act shows that he did it with the intent to benefit or serve the master. It must be something done in attempting to do what the master has employed the servant to do. Nor does the question of liability depend on the quality of the act, but rather upon the question whether it has been performed in the line of duty and within the scope of authority conferred by the master. Daniel v. R. R., supra. There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony, or recovering it back, and an act done for the purpose of punishing the offender for that which has already been done. Daniel v. R. R., supra. This view is expressed in Kellyv. Shoe Co., 190 N.C. 406, by Varser, J., as follows: "Liability does not flow from the employee's intent to benefit or serve the master, but it does flow from the acts of the servant, or employee, in attempting to do what he was employed to do, that is, the acts complained of must have been done in the line of his duty, and within the scope of his authority." Butler v.Mfg. Co., 182 N.C. 547; Munick v. Durham, 181 N.C. 188; Clark v. Bland,181 N.C. 112, and the line of cases cited in these authorities.
The general scope of the authority of the defendant DeButts was very broad. The term "general manager" implies the right to exercise judgment and skill, and the idea that the management of the affairs of the company has been committed to him with respect to the property and *Page 125 
business of the corporation. It implies general power and permits a reasonable inference that he was invested with the general conduct and control of the defendant's business committed to his charge. The term carries with it implied authority to act in emergencies, or generally, as the principal officer of the corporation in reference to the ordinary business and purposes of the corporation in the conduct of its affairs within his charge. Whipple v. Insurance Co., 222 N.Y. 39; Gas Light Co.v. Lansden, 172 U.S. 534; Kelly v. Shoe Co., supra. It does not, however, include the implied authority to punish for past offenses or to assaults committed outside the scope of employment and not in the range of the servant's duties, prompted by the personal ill will or malice of the employee.
We must then examine into the implied powers and duties of DeButts to determine whether the act complained of could reasonably be interpreted as coming within the implied powers conferred upon him and whether he was at the time engaged in the discharge of his duties to his employer, so as to determine the liability of the corporate defendant upon the verdict rendered.
While it is a matter of common knowledge that the trial of legal actions and the conduct of judicial hearings of the type indicated is ordinarily committed by public service corporations to its legal staff, we may concede that it was within the implied authority of DeButts, as general manager, to supervise and direct the hearings before the Corporation Commission and the committee of the Legislature. The possession of such a broad range of authority could not reasonably be interpreted to embrace the direction, control, intimidation, or coercion of witnesses of the adversary. Afortiori, an agent of the corporation, however board his authority may be, cannot be said to be acting within the scope of his employment or about his master's business when he undertakes to take to task, abuse, and assault a witness of the adversary who has already testified, when prompted by his resentment generated by his conception that the testimony of such witness was false and detrimental to the interest of his principal.
Applying the principals enumerated in these decisions to the testimony in the instant case, we are constrained to hold that the evidence fails to show that DeButts was acting within the range of his employment and was about his master's business in assaulting the plaintiff, but rather that he was acting in spirit of vindictiveness to gratify his personal animosity. The wrong was not committed under such conditions as would invoke the doctrine of respondeat superior, and no liability attaches to his principal for the resulting injury.
The conduct on the part of DeButts was reprehensible and inexcusable. To hold, however, that the corporate defendant had impliedly *Page 126 
authorized its agent to pursue the course he did and that such conduct was within the range of his employment without any evidence of authority, ratification, or approval, would be to imply that this defendant had embarked on a course of dealings in direct conflict with accepted proprieties in judicial proceedings, and that it is imposed upon its agent duties which give evidence that it is devoid of any sense of responsible citizenship.
It does not clearly appear from the evidence that the assault occurred on the premises of the defendant. Even so, the plaintiff was present, not as an employee or prospective passenger, but for his own convenience to meet a fellow mail carrier. Under these circumstances, if the assault was committed on the premises of the defendant, the fact alone would not impose liability on the defendant. Strickland v. Kress, 183 N.C. 534; Sawyer v.R. R., 142 N.C. 1.
The exception of the defendant railroad company to the refusal of the general county court to dismiss plaintiff's action as against it as of nonsuit should have been sustained. The judgment as against the appealing defendant is
Reversed.