F. N. HUSSEY v. THE NORFOLK SOUTHERN RAILROAD COM-
PANY and M. K. KING.

*Corporations—Ultra Vires—Slander—Libel—Malicious Prose-
cution—Tort—Master and Servant—Joinder of Parties.*

1. An action may be maintained against a corporation for torts—*e. g.*,
   slander, libel and malicious prosecution—however foreign they
   may be to the objects of its creation or beyond its granted powers.

2. And this liability extends to the tortious acts of its servants, done in
   its service.

3. The corporation and its servant, by whose act the injury was done,
   may be joined in the action.

4. Whether the act was committed by the servant in the service of
   the corporation, or for his own purpose, or the latter authorized or
   participated in it, are questions of fact for the jury.

CIVIL ACTION, tried before *Avery, Judge,* at Spring Term,
1887, of TYRRELL Superior Court.

The plaintiff alleged:

"1st. That the defendant, The Norfolk Southern Railroad
Company, is a corporation duly chartered under the laws of
North Carolina, doing business under said name, in build-
ing, constructing, equipping and operating a railroad in the
State, and running steam vessels connecting the business of
said road with several business and commercial points on
Albemarle sound and Alligator, Scuppernong and Roanoke
rivers, in said State, and the defendant M. K. King is gen-
eral manager of said company's business.

2d. That G. M. Scott is a justice of the peace in and for
Pasquotank county, having been duly appointed and quali-
fied as such, and was at the time of the act heinafter com-
plained of, and his acts are entitled to full faith and credit
as such, and were at that time.

3d. That on or about the 24th day of July, 1885, the de-
fendants, maliciously and wantonly intending to injure

plaintiff in his good name, fame and reputation, and to bring him into ridicule and public contempt, appeared before G. M. Scott, a justice of the peace of Pasquotank county, in the State of North Carolina as aforesaid, falsely, maliciously, wantonly, and without any reasonable or probable cause whatsoever, charged this plaintiff before said justice of the peace, in a written affidavit duly sworn to, with having left and withdrawn himself from the service of defendant company on or about the 10th day of March, 1885, and carrying with him several amounts of money, to-wit: the sum of $6.00, $23.02, $10.00 and $3.59, belonging to said company, with a felonious intent to steal the same and defraud said company; and further charged this plaintiff before said justice, at the same time, without any reasonable or probable cause whatsoever, with having embezzled said money while plaintiff was in the employment of said company; and converting the same to his own use, with the purpose of stealing the same, or of defrauding said company, and wantonly, maliciously, without any reasonable or probable cause, procured said justice of the peace to grant a warrant for the arrest of this plaintiff upon said charge, which was malicious, false and untrue in all respects, and defendants well knew said charge was false and untrue at the time.

4th. That G. M. Scott, the said justice, issued his warrant accordingly on the 24th day of July, 1885, and defendants caused this plaintiff to be arrested and imprisoned under the same, being held in custody of the officer of the law until he gave bail, as he was obliged to do, for his appearance at the trial and examination of the cause.

5th. That afterwards, to-wit: on the 28th day of July, 1885, the day of examination and trial, the plaintiff having been examined and tried before the said justice for said supposed crime, according to law, the said justice adjudged the plaintiff not guilty thereof, and fully acquitted him of

the same, and discharged him, and that since that time the defendants have not further prosecuted their said complaint, but have abandoned the same.

6th. That by means of said wanton, malicious, unlawful and false charge, and malicious prosecution of the defendants against this plaintiff as aforesaid, plaintiff has been injured in his person, good name, fame and reputation, and brought into ridicule and public contempt, and prevented from attending to his business, and compelled to pay large sums of money, costs and counsel fees, in defending himself against said charge, to his damage five thousand dollars."

For a second cause of action the plaintiff alleged, that he was wrongfully and unlawfully arrested and imprisoned by reason of the warrant issued upon the false, wanton and malicious charge of the defendants; that he was acquitted of said charge by the justice, the warrant dismissed, and he was discharged from custody. The damages are laid at $5,000.

And for further cause of action plaintiff alleged :

" 1st. That on or about the 24th day of July, 1885, the defendants wantonly and maliciously intending to slander and scandalize plaintiff in his good name, fame and reputation, and to bring him into ridicule and public contempt, and destroy his character, appeared before G. M. Scott, a justice of the peace of Pasquotank county, and State aforesaid, and then and there, in the presence and hearing of said Scott and several other persons, charged plaintiff in the written affidavit of defendant M. K. King, general manager of defendant The Norfolk Southern Railroad Company, with having stolen and embezzled several certain sums of money belonging to the defendant company, to-wit: the sum of $6.00, $23.02, $10.00 and $3.59, in words and figures as follows : to-wit: ' That on or about the 10th day of March, 1885, The Norfolk Southern Railroad Company, a corporation duly chartered by the Legislature of North Carolina, in said county

of Pasquotank, delivered its check for four hundred and fourteen dollars and seventy-nine cents ($414.79), and drawn upon the Exchange National Bank of Norfolk, Va., in favor of F. N. Hussey, master of steamer called M. E. Dickerman.

" That on or about the date aforesaid the said F. N. Hussey negotiated the said check and obtained the money therefor, and afterwards withdrew himself from the service of said company, and went away with a part of said money, with intent to steal the same and defraud the said company, to-wit: six dollars, twenty-three dollars and two cents, ten dollars, three dollars and fifty-nine cents," thereby accusing and charging this plaintiff with the high crime of larceny.

" That the said F. N. Hussey, at or about the date above named, being then a servant of said company, and so possessed of certain money of said company entrusted to him, did, without the assent of his employer, the said Norfolk Southern Railroad Company, embezzle certain parts of said money, to-wit: the sum of $6.00, $23.02, $10.00 and $3.59, and convert the same to his own use, with the purpose of stealing the same, or of defrauding the said company thereof, thereby and by these means intending to accuse this plaintiff with the high crime of embezzlement."

2d. That though these charges were false and untrue, and defendant knew them to be so at the time they procured the said justice to grant a warrant for the arrest of plaintiff, and caused him to be arrested and imprisoned wrongfully and unlawfully upon said false charge, and detained in custody of the officer of the law, and to give bond to appear before said justice for examination and trial on the 28th day of July, 1885, and the defendants then and there appeared upon said trial and examination, and again in the presence of said G. M. Scott, and many others—divers persons, at the court-house in Elizabeth City, Pasquotank county, N. C., and at divers other places before and since—charged and accused this plaintiff with stealing and embezzling money, the property

of defendants, The Norfolk Southern Railroad Company, as above set out, of the sum of $6.00, $23.02, $10.00, and $3.59, all of which acts and doings of these defendants are wrongful and unlawful, and contrary to law, and has endamaged this plaintiff in the sum of five thousand dollars.

Wherefore plaintiff demands judgment for the wrong and damage, &c.

To this the defendant railroad company filed the following demurrer:

1st. It does not state facts sufficient to constitute a cause of action.

(*a*) It appears from the complaint, that the injuries complained of, resulted from the acts of M. K. King, not done in the scope of his authority or duty as agent, nor in the service of this company, nor by its authority at the time of or prior to the said acts; and it does not appear, and is not alleged, that said acts, or any of them, were ratified subsequently by this defendant.

(*b*) The complaint does not state what wrongful words were spoken, or acts done, (except those spoken and done by the defendant King) nor where, nor when, nor by what agent or representative of the company, they were spoken or done, so as to enable this defendant to answer the same.

(*c*) Except the words spoken and acts alleged to be done by the defendant King, it does not appear that any words were spoken, or acts done, with malicious purpose, and without probable cause.

(*d*) It appears that this defendant is a railroad corporation, and is not as such liable for an action for malicious prosecution.

2d. There is a misjoinder of parties defendant, for that:

(*a*) The liabilities of the defendants are independent and distinct.

(*b*) The torts complained of are not joint, but several.

(*c*) The defences of the two defendants are different, inconsistent and repugnant.

The Court sustained items "a," "b" and "c" of defendant railroad company's first cause of demurrer and overruled item "d," and overruled all of defendant company's second cause of demurrer. The plaintiff excepted and appealed.

*Mr. E. F. Aydlett,* for the plaintiff.
*Mr. L. D. Starke,* for the defendant.

DAVIS, J., (after stating the case). The question presented by the appeal is: Was there error in sustaining the demurrer of the defendant company, as set out in paragraphs "a," "b" and "c" of the first cause of demurrer?

*The Code,* §233, requires that the complaint shall contain "a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition."

The facts should be so stated as to leave the defendant in no doubt as to the alleged cause of action against him, so that he may know how to answer, and what defence to make. The demurrer admits the facts contained in this complaint. Do they constitute a cause of action? The defendant company says no.

It is true, that the defendant King is the general manager of the co-defendant company's business, and that the defendants King and The Norfolk Southern Railroad Company did the acts complained of, and the charge upon which the alleged malicious prosecution was instituted, and the false arrest and imprisonment made, was the alleged embezzlement of the money of the defendant company, and the warrant was sued out by the defendants, upon the written affidavit of the defendant King, general manager of the defendant company; but, says the defendant company, the plaintiff fails to allege that these acts were done, by King, "in the scope of his authority or duty as agent," &c., and therefore he cannot recover.

It is admitted (the demurrer admits) that the acts were

done by the *defendant;* if so, does it matter how? Is it necessary to allege that the agent was authorized to do them, and that he was acting within the scope of his authority and duty?

It must be necessary to prove any material fact, necessary to be alleged, unless admitted.

If corporations, as we shall presently see, are liable for torts and wrongs committed *ultra vires,* outside and beyond the purpose of their creation, and not within the scope of their granted powers and authority, it would seem a logical absurdity, to say that any tort or wrong so committed, was committed, or could be committed, by an agent or servant *within the scope of the authority* of such agent or servant. If the acts were *ultra vires,* they could not be within the scope of the power or authority of the company, or of its agent or servant, and the allegation, if necessary to be made, could not be proved, and the plaintiffs must fail. This cannot be so.

It was long thought that as the corporation has no mouth with which to utter slander, or hand with which to write libels, or commit batteries, or mind to suggest malicious prosecutions or other wrongs—as it was an artificial person and could speak and act only through and by the agency of others, it was, therefore, not liable for any torts except such as resulted from some act of commission or omission of its agents or servants, while acting within the scope of granted powers, or wrongfully omitting or neglecting some duty imposed by its charter or by laws; and consequently it was necessary to allege that the act committed was while acting within the scope of the power and authority of the company, or that the act omitted was required to be performed. Whether it was wise to depart from this rule, that exempted corporations from liability for the acts of agents in cases where the character of the act depended upon motive or intent, seems no longer an open question.

The old idea that because a corporation had no "soul," it could not commit torts or be the subject of punishment for tortious acts, may now be regarded as obsolete.

The rights, the powers, and the duties of corporate bodies have been so enlarged in modern times, and these "artificial persons" have become so numerous, and entered so largely into the every day transactions of life, that it has become the policy of the law to subject them, as far as practicable, to the same civil liability for wrongful acts, as attach to natural persons, and this liability is not restricted to acts committed within the scope of granted power, but a corporation may be liable for an action "for false imprisonment, malicious prosecution, and libel." Pierce on Railroads, 273.

"The doctrine which once obtained that the master is not liable for the wilful wrong of his servant, is now understood as referring to an act of positive and designed injury, not done with a view to the master's service, or for the purpose of executing his orders. * * * * * * Whether the servant did the act with a view to the master's service, or to serve a purpose of his own, is a question for the jury." *Ibid.*, 279. Whether the corporation authorized or participated in the tort is matter for proof, and the defence of *ultra vires* is not admitted. *Ibid*, 520.

It is true that it was held in *Orr* v. *The Bank of the United States*, 1 Hamm., Ohio Reports, 25, that a corporation could not be sued in an action for assault and battery, nor could it be joined in such an action with other defendants, and in *Gillett* v. *Missouri Valley R. R. Co.*, 55 Mo., 315, it was held by a divided Court, that a railroad corporation was not liable for a malicious prosecution in the name of the State for alleged embezzlement of its funds, but a different doctrine seems now well established.

"Corporations are liable for every wrong they commit, and in such cases the doctrine of *ultra vires* has no application.

They are also liable for the acts of their servants while such servants are engaged in the business of their principal, in the same manner, and to the same extent, that individuals are liable under like circumstances. An action may be maintained against a corporation for its malicious or negligent torts, however foreign they may be to to the object of its creation, or beyond its granted powers. It may be sued for assault and battery, for fraud and deceit, for false imprisonment, for malicious prosecution, for nuisance and for libel." *National Bank* v. *Graham*, 100 U. S., 699, and many authorities there cited; *Merchants' Bank* v. *State Bank*, 10 Wallace, 645; Angell & Ames on Corporations, §388.

" It is no defence to legal proceedings in tort, that the torts were *ultra vires.*" *Gruber* v. *Railroad Co.*, 92 N. C, 1. *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Quigley,* 21 Howard, 202, was an action against the defendants (plaintiffs in error) for libel. It was insisted that the railroad being a " corporation with defined and limited faculties and powers, and having only such incidental authority as is necessary to the full exercise of the faculties and powers granted by their charter; that being a mere legal entity, they are incapable of malice, and that malice is a necessary ingredient in a libel; and the action should have been instituted against the natural persons concerned in the publication of the libel. But a different view was taken by the Court, and it was held that a corporation could be held liable *ex delicto,* as well as *ex contractu,* and that this view was in consonance with the legislation and jurisprudence of the States of the Union, relative to " these artificial persons."

The subject is discussed at length in *Williams* v. *Planters' Insurance Co.*, 57 Miss , 759, and the note to the case as reported in 34 Am. Rep., 494, in which the authorities are collated, from which the conclusion is fully warranted, that a corporation is liable for malicious prosecution conducted by one of its agents.

In the still more recent case of *Denver & C. R. R. Co.* v. *Harris*, 122 U. S., 597, in an elaborate opinion, in which many authorities are cited, it is said : "If a corporation has itself no hands with which to strike, it may employ the hands of others; and it is now perfectly well settled, contrary to the ancient authorities, that a corporation is liable *civilter* for all torts committed by its servants or agents by authority of the corporation, express or implied.  *  *  *  *  * The result of the modern cases is, that a corporation is liable *civilter* for torts committed by its servants or agents, precisely as a natural person ; and it is liable as a natural person for the acts of its agents, done by its authority, express or implied, though there be neither a written appointment under seal, nor a vote of the corporation constituting the agency, or authorizing the act."

"The corporation, and its servant, by whose act the injury was done, may be joined in an action of tort in the nature of trespass."   Pierce on Railroads, 292.

In the case before us, the "statement" contained in the complaint, is sufficiently "plain" to enable the defendant company to understand clearly and without mistake, the nature of the tort with which it is charged, and it is thus enabled to answer and prepare intelligently for its defence.

There is error.   The demurrer is overruled, and the defendant may take such action below as he is advised.

Error.