CLARK, J., and FURCHES, C. J., dissenting. *Page 428 
This action was brought to recover damages against defendant company on account of the alleged illegal arrest and imprisonment of plaintiff caused by defendant company through its manager, agents and attorneys. Defendant company denied that it authorized said arrest or imprisonment through its manager, agents and attorneys, and denied that it took any part in the matter, or gave any instructions about it, or assumed any responsibility for the same. Upon the trial, the jury found the issues in favor of the plaintiff, and defendant appealed.
The circumstances under which plaintiff was arrested, and facts appearing from the evidence are, substantially, that on November 10, 1900, defendant company's passenger train was wrecked near Hope Mills, about two hundred yards from plaintiff's house. The engineer was killed, the fireman and many others seriously injured, the engine demolished and some of the cars torn to pieces. It occurred about midday, and was caused by the placing of a spike on one of the rails. Plaintiff was not at home, but at a house near by, when the wreck occurred, and went to it ten minutes afterwards. He then went to his house, and, after getting his dinner, he and one Tart, who had been boarding with him about two weeks, went out of the house together, and Tart told him that he (Tart) put the spike on the track. After walking about twenty-five yards, and about two minutes after Tart told him of his act, they separated, and Tart went in the direction of Rockfish (a creek); he then told his wife and wife's mother, who was at his house, about this, and then went in pursuit of officers to inform them of what had been told him. After talking to several persons about it, he went to defendant company's *Page 429 
depot and told Campbell, defendant's agent, about it, and he reported it to the train dispatcher. While with Campbell, Monaghan, a Deputy Sheriff, came in and arrested him, and carried him over the woods looking for Tart. After returning, Monaghan put him in custody of Johnson. He was taken into the depot, and they had him to swear out a warrant before Cashwell, a Justice of the Peace, against Tart, which had been prepared by Pope. After Cashwell issued the warrant, Geo. M. Rose made a motion that the State's witness, the plaintiff, should be put under bond. Cashwell then required plaintiff to give a $500 justified bond for his appearance on Monday as a State's witness. Rose, attorney of defendant, or Kenly, general manager of defendant, were present. In the presence of the Justice, Rose and Kenly, Pope, attorney for defendant, said he wanted to know what they were going to do with him, and Rose and Kenly said they would have to bring him on to town with them; then Monaghan, the Deputy Sheriff, put him in the custody of Faircloth, town policeman. He was kept under arrest five days and nights. On Saturday night, Monaghan told him he was arrested as a State witness for safe keeping. Tart was not arrested; no trial was had; plaintiff was not charged with any crime; there was no trial or hearing, nor was he sworn as a witness. Afterwards, the plaintiff was discharged by Faircloth upon giving bond for $100, drawn by Rose, the amount of which was not authorized by the Justice to be reduced.
Upon the conclusion of the evidence, defendant's attorney asked the Court to give eleven special instructions, eight of which were refused upon exception, and are as follows:
"1. A principal can not be held liable for the acts of an agent unless the agent acts within the scope of his authority, and in this case the defendant can not be held liable for the arrest of the plaintiff, made by the verbal direction of Mr. *Page 430 
Pope, because there is no evidence that Mr. Pope was authorized by defendant to do this act, and that the act was within the scope of his authority.
"4. That defendant is not liable for the mistake or error, if such there be, of the committing magistrate acting in his judicial capacity, and if the jury should believe that the plaintiff was put under bond for his appearance at a future day by the Justice acting as a judicial officer, that neither he nor the defendant would be liable unless his error was wilfully made and unlawfully procured by defendant.
"5. If the jury believe from the evidence that a felony had been committed, and the plaintiff had taken out a warrant charging such felony, it was the duty of the magistrate to hold the plaintiff under bond as a witness for the State, if he believed that the proofs and facts before him made it probable that the plaintiff would not appear as such witness at the hearing.
"6. If the jury believe from the evidence that a passenger train on defendant's road had been wrecked as described by the witnesses, and a felony committed, and death ensued from such wrecking, it was the duty of the defendant, as a good citizen, to pursue all lawful remedies to arrest the felon, and in so doing it was not a violation of the law for it to hold a person who had declared his knowledge of the facts until a legal investigation could be had.
"7. If the jury believe the evidence, the defendant is not responsible for anything that took place after the warrant had been issued, and the matter acted upon by the Justice in his judicial capacity, and a mere fact that an attorney of the company, or an officer thereof, asked the Court, sitting as a Court, to hold the plaintiff upon a bond, does not render the defendant liable therefor, or for any of the other acts of the public officers in their official capacity, and they should answer the first issue `No.' *Page 431 
"8. If the jury find from the evidence as testified to by the Justice that after Monday morning, November 12, he held the plaintiff as a State's witness upon the telegram from the Solicitor, and not upon his former order, that then in no event could defendant be held responsible for the acts of public officers after that time." (The Court gave this instruction, striking out the words "as testified to by the Justice," and defendant excepted to the striking out of said words.)
"10. If the jury believe from the evidence in this case that the arrest of the plaintiff was unlawful, there is no evidence of any injury or mental suffering or insult accompanying the arrest, and plaintiff is not entitled to punitive damages, and can only recover such actual damages as he has proved.
"11. If the jury believe from the evidence that defendant acting in good faith for the protection of the lives of its passengers and property, made a mistake in asking the officer to hold the plaintiff as a witness, and this mistake was an honest one, and the holding was not accompanied by fraud or malice toward the plaintiff, that then he would not be entitled to any damages except nominal damages."
At the request of plaintiff's attorney, his Honor gave the following special instructions, to which defendant excepted:
"1. In order to constitute an arrest, it is not necessary that plaintiff be actually imprisoned, that is, put in jail; but if he be placed in custody, restrained of his liberty for any though least period of time, then he is imprisoned, and if such restraint is without authority or warrant of law, then he is falsely imprisoned and illegally restrained.
"3. That the agent Campbell and the general manager Kenly, and attorneys for the defendant, Rose and Pope, were the agents and servants of defendant, and the latter is *Page 432 
responsible for the acts of its agents done in the exercise of the authority conferred upon them.
"5. It is no defense to the corporation that the acts complained of wereultra vires, for it matters not how much in excess of its authority the wrongful act may be, if such act has been done by the agent or attorney, while acting within the scope of his authority, either express or implied.
"8. There is no authority in law, under section 1154 of The Code, or otherwise, to restrain the plaintiff of his liberty, nor is the telegram of the Solicitor authority to arrest or detain the plaintiff."
From judgment for the plaintiff, the defendant appealed.
In its defense, defendant company contends that there is no evidence to show that the arrest, in the first instance, or the imprisonment under the order of Cashwell, the Justice, was authorized by it, through anyone whomsoever. And if its agents were present and did participate in the arrest and imprisonment, there is no evidence that they acted within the scope of their authority, and thereupon asked the Court to give the special instruction No. 1. In view of all the testimony set out in the record, we think his Honor properly refused to give said instruction. The evidence shows that Kenly, the general manager, Campbell, the local agent, and two of defendant's attorneys, were present at the depot, only a few hundred yards from the wreck, and that Pope was one of the attorneys. On account of the great destruction of the company's property, interference with its business, killing its engineer and injuring others of its servants and passengers, it was deeply interested in apprehending the criminal; and being only legal entity and having to perform all of its duties and business *Page 433 
through agents, one of which duties being that of protecting its passengers while on its train and safely carrying them to their destinations, which casts upon them a burden, in common with other good citizens, of disarming those evilly disposed to its property and traffic by arresting and bringing them to trial and having them justly punished, we think the conduct and acts of its agents, attorneys and officers upon that occasion was some evidence that they were acting within the scope of their authority. The single act of Pope, disconnected from the acts and conduct of his fellow attorney and general manager and local agent, and from the wreck, would not have been any evidence that he was acting within the scope of his authority as attorney. But taken in connection with that of Campbell, the local agent, to whom plaintiff told Tart's confession, and his repeating the same to the train dispatcher, the arrest taking place in his warehouse within thirty-five or forty minutes, his sending for the Justice, Cashwell, and what followed, we think it was clearly some evidence to be submitted to the jury for their consideration in determining whether the general manager, agent and attorneys were acting within the scope of their authority. Husseyv. Railroad, 98 N.C. 34; Daniel v. Railroad, 117 N.C. 592; and that his Honor ought not to have given the same.
There was no charge or suggestion that plaintiff was guilty of the crime of wrecking the train. His only connection with the matter was, that he sought to communicate to officers of the law and defendant's agents that Tart had told him that he (Tart) had put the spike on the track which caused the wreck. Having done so, he was arrested without warrant and carried under arrest through the woods looking for Tart. Failing to find Tart, upon his return he was called upon to make an affidavit and apply for a warrant against Tart, which had been prepared by Pope, who was an attorney of defendant company. As soon as it was issued, he was, on *Page 434 
motion of Rose, another attorney, made in the presence of Kenly the manager and Pope, required to give a bond in the sum of $500 for his appearance the following Monday before the Justice who issued the warrant, and in default thereof was kept in custody.
There is no law which warrants such a proceeding. There is no statute which authorizes a Justice of the Peace or magistrate to require of awitness to give bond for his appearance before such Justice or magistrate. The only provision for requiring a witness to give bond is when upon the examination of a matter wherein a person is accused of an offense and it shall appear that an offense has been committed, and there is probable cause to believe the prisoner to be guilty thereof, the magistrate shall bind over or commit such prisoner, and shall bind by recognizance the prosecutor and all the material witnesses against such prisoner to appear and testify at the next term of the Court having jurisdiction. Code, sec. 1152. And if such magistrate shall be satisfied by proof that there is good reason to believe that any such witness will not fulfill the conditions of such recognizance unless security be required, he may order such witness to enter into a recognizance with such sureties as may his appearance. Code, sec. 154. If any witness so required to enter into a recognizance shall refuse to comply with such order, it shall be the duty of the magistrate to commit him to prison. Code, sec. 1155.
In this case the person charged with the offense had not been taken. So there was no examination; there could be no examination in the absence of the person charged; in fact, the record shows that none was attempted; upon the issuing of the warrant, on motion, the Justice required the bond to be given conditioned upon his (plaintiff's) appearance on the following Monday before said Justice. Having issued the warrant against Tart, it properly belonged in the *Page 435 
hands of the Sheriff or constable. Tart not having been arrested, there was nothing before the Justice over which he had jurisdiction — neither subject-matter nor person. It therefore follows that he was not acting in his judicial capacity, and his order had no legal force. He, together with those encouraging and advising him, was a trespasser. Newell on Malic. Pros., pages 89, 90; People v. Liscomb, 60 N.Y. 559, 19 Am. Rep., 211;Bigelow v. Stearnes, 19 Johns (N. Y.), 39, 10 Am. Dec., 189. Wherefore, his Honor properly refused instructions Nos. 4, 5, 6 and 7.
The exception to his Honor's striking out the words "as testified to by the Justice," in giving instruction No. 8, is without merit. So, this brings us to the investigation of instructions 10 and 11, refused by the Court, relating to the damages, and we find no error in his refusal. There was evidence of injury to plaintiff on account of his arrest and imprisonment. He was restrained of his liberty and deprived of the comforts of his family — wife and two children under five years of age, and during the five days he was under arrest, they needed him for lack of something to eat, for lack of wood and for lack of attention in sickness. And his Honor did instruct the jury in the latter part of his charge "that in no event could they find that plaintiff was entitled to recover punitive damages." But he instructed them, as requested by defendant in its ninth prayer, that plaintiff could "only recover actual damages, including injury to feelings and mental sufferings, and is not entitled to punitive damages unless the arrest was accompanied with malice, gross negligence, insult or other aggravating circumstances." Lewis v. Klegg, 120 N.C. 292; Neal v.Joyner, 89 N.C. 287.
We are unable to discover any error in giving the special instructions asked for by plaintiff. They seem to have been prepared in conformity to well-considered rulings made by *Page 436 
this and other Courts. The first is supported by State v. Buxton,102 N.C. 129, and cases there cited; the third and fifth by Cook v.Railroad, 128 N.C. 336; Strother v. Railroad, 123 N.C. 197; Fogg v.Railroad, 148 Mass. 514; 12 Am. St. Rep., 583; Wells v. Market Co., 19 D.C., 385; Penn Co. v. Weddle, 100 Ind. 138; 14 Howard (55 N. S.), 468; Hussey v. Railroad, 98 N.C. 34; 12 Am. and Eng. Enc. (2d Ed.), 725, and cases there cited; and the eighth is covered by what we have hereinbefore said and authorities cited.
There is no Error.