157 So.2d 190 (1963)
COLUMBIA BY THE SEA, INC., A FLORIDA CORPORATION, TRADING AS ROCKY POINT BEACH RESTAURANT, APPELLANT,
v.
RAY S. PETTY, APPELLEE.
No. 3629.
District Court of Appeal of Florida, Second District.
October 16, 1963.
Rehearing Denied November 14, 1963.
John S. Matthews, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
William M. Register, Jr., of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellee.
ALLEN, Acting Chief Judge.
Appellant, one of two co-defendants below, appeals a final judgment consequent upon a jury verdict for the sum of $2,500 compensatory damages and $1,250 punitive damages for appellee, plaintiff below.
Appellee sued appellant, the corporate owner of the Rocky Point Beach Restaurant, *191 and a co-defendant Jose Menendez, an employee of the appellant who was maitre d' of the restaurant, for an alleged assault and battery committed by Menendez while acting within the scope of his employment. The underlying facts are, briefly, as follow.
Appellee entered appellant's restaurant and ordered a $3.25 dinner, specifying roquefort dressing for his salad. After finishing the dinner he was presented the bill, including an extra 35¢ charge for the roquefort dressing. When appellee objected to this charge, Menendez was summoned. At this point testimony conflicts, each party's witnesses insisting that the other was abusive. At any rate, appellee left the restaurant, refusing to sign or pay the check and apparently intent on consulting the manager of the adjacent motel (a distinct operation, which by arrangement would include guests' restaurant bills on their motel account). Menendez followed appellee to the motel office and gave the desk clerk the bill, instructing him to put it on appellee's account. According to the testimony, the motel manager was in the restaurant at the time. Appellee and Menendez apparently became increasingly angry. Appellee and the desk clerk testified that Menendez asked appellee to "step outside." All witnesses agree appellee made a sweeping motion toward Menendez and called him a "bastard." Menendez then struck appellee on the back of the head with an ashtray. Suit ensued.
The theory upon which appellant's liability is predicated is evidenced in several paragraphs of the complaint, of which the following is representative:
"5. The defendant Jose Menendez intentionally struck the plaintiff in the manner described in an effort to force the plaintiff to pay for the restaurant bill, which act of attempted enforcement of said payment was performed by the said Jose Menendez while then and there in the course of his employment and acting on behalf of and for the defendant, Columbia By the Sea, Inc. The defendant Jose Menendez was employed by the defendant Columbia By the Sea, Inc. in a managerial capacity in the operation of the aforesaid Rocky Point Beach Restaurant, and among his duties in such managerial capacity was the obligation to protect the interests of the defendant Columbia By the Sea, Inc., and to secure payment for bills rendered by said restaurant."
Appellant's response to this allegation and to the evidence adduced to sustain it is evidenced in one of its several assignments of error:
"The Trial Court erred in denying the defendant's Motion for a Directed Verdict at the conclusion of the plaintiff's case, and ruling that the evidence was sufficient to present a jury question as to whether or not the employee of the defendant, Columbia by the Sea, Inc., was serving the interests of his employer at the time of the assault upon the plaintiff; and in refusing to rule, as a matter of law, that based on the evidence, the employee had stepped aside from the course and scope of his employment and committed an assault for purely personal reasons, and that his employer was not liable for the assault, as a matter of law."
Thus, the question on appeal is whether the evidence adduced as to Menendez having acted within the scope of his employment presented a question for the jury or conclusively indicated appellant employer's non-liability. Counsel for both parties have submitted comprehensive briefs in support of their respective positions and have cited numerous cases as sustaining their contentions. Unfortunately, the cases are often distinguishable, involving distinct and distinctive facts or proceeding upon a theory of liability neither pleaded nor relied upon below. Thus, while the authorities cited are valuable as indicative of the general rule *192 and as exemplificative of varying applications of the rule, they serve only this limited use.
A succinct statement of the applicable principle of law is found in the Annotation, "Liability of employer other than carrier for a personal assault by employee upon customer, patron, or other invitee," in 114 A.L.R. 1033 (1938). This statement, to which the Supreme Court of Florida has subscribed, Weiss v. Jacobson, Fla. 1953, 62 So.2d 904, is:
"The majority of the well-reasoned decisions pointing out the farthest boundaries of the doctrine of respondeat superior have proceeded in accordance with the rule stated by Cooley, J., at an early stage in the development of modern views as to the liability of a master for the torts of his servant: `The liability of the master for intentional acts which constitute legal wrongs can only arise when that which is done is within the real or apparent scope of the master's business. It does not arise where the servant has stepped aside from his employment to commit a tort which the master neither directed in fact, nor could be supposed, from the nature of his employment, to have authorized or expected the servant to do * * *.'"
This subject receives expanded attention in an excellent superseding Annotation in 34 A.L.R.2d 372 (1954) where, in the "Summary and comment," the authors write:
"The basis of liability most often invoked against a master for assaults by a servant upon a customer, patron, or other invitee is that of respondeat superior  literally, let the master respond. Responsibility under such doctrine is recognized as being secondary, and is not confined to authorized or ratified acts, but extends to acts which are incidental to the employment or within its scope. Upon a hypothesis of agency or representation, the constructive presence of the employer at the scene of the assault raises an implication that the act of the employee is that of the employer. The general proposition that a master is liable for assaults committed by his servant upon a customer, patron, or other invitee where such assault is committed by the servant while acting within the scope of his employment is almost universally recognized, and there is general agreement that where an assault is purely personal to the servant, having no real connection with the master's business, the doctrine of respondeat superior is inapplicable to fasten liability upon the master. However, in the determination of whether an assault is purely personal many factors have a bearing. Foremost among these is the question of motivation, for while motivation is not conclusive on the issue, it has been recognized in many cases as especially important, or at the very least a factor which may be taken into consideration along with the nature of the employment to determine the question whether the servant was acting within the scope of his employment in committing the assault. While some cases lean toward a contrary view, the general rule is that if the assault is motivated entirely by personal reasons such as malice or spite, or by a desire to accomplish some unlawful purpose, or even where it is the result of horseplay or mischief, and does not have for its purpose the furtherance of the master's business, it will be considered personal to the servant and not such as will make the master responsible.
* * * * * *
"In some instances the course of the assault with reference to its time and place has been considered in relation to whether it was committed within the course of the employment. An assault committed at a time when the business dealings for which the person assaulted has come upon the employer's premises *193 have been completed is generally considered not to have been committed by the servant while acting within the scope of his employment. On the other hand, the mere fact the assault was not committed on the premises of the employer, but was committed after the person assaulted left the premises, will not, if it is but a continuation of an altercation having as its inception a disagreement arising while the parties were involved with the master's business, be sufficient to show that it was not committed while the servant was acting within the scope of his employment."
In succeeding sections of this latter Annotation the several factors of significance in determining "scope of employment" and most, if not all, of the cases cited by the parties in the instant case are discussed. Without attempting extensive discussion of or quotation from this portion of the Annotation, it should suffice to say that seldom is one of the factors of the employee's motivation the nature of his duties or the course of the assault deemed of itself decisive; rather, each must be considered in terms of the others.
As is manifest in the Annotations, and as cases in this jurisdiction indicate, each case involving respondeat superior must be determined on its own unique facts, e.g. Dieas v. Associates Loan Company, Fla. 1957, 99 So.2d 279. Accordingly, it is to the evidence and permissive inferences in this case that attention must be directed.
In urging reversal, appellant points out that the complaint alleged that Menendez struck appellee in an effort to force him to pay the restaurant bill. Appellant then argues:
"* * * that there was no proof whatsoever offered by the plaintiff in support of this necessary allegation. It is uncontradicted in the evidence and testimony that prior to the assault Menendez had divested himself of Petty's restaurant bill [and] handed it to a third party with the instruction that it be charged to Petty. Therefore, there is no interpretation of this evidence, nor factual conclusions, nor inferences to be drawn therefrom to the effect that Menendez, by the assault, was attempting to enforce payment. Menendez had discharged and completed whatever duties it might be supposed that he had in connection with collection. The assault and battery was subsequent and divorced.
"Moreover, it is crystal clear that the assault and battery was committed out of indignation, anger and personal malice. It is uncontradicted that there was a heated, personal quarrel between Petty and Menendez. It is uncontradicted that both were angry. It is uncontradicted that they were personally profaning one another. It is uncontradicted and undisputed that Menendez struck the blow upon which this entire lawsuit is predicated after he was called a personally insulting, profane and vulgar name."
In response, appellee points out that the "heated, personal quarrel" and Menendez's presence in the motel were both a direct result and an incident of his duty to supervise restaurant operations and to adjust differences with the customers. This causal connection and the evidence that Menendez offered physical combat prior to divesting himself of the bill would diminish appellant's argument that the assault followed termination of the employee's attempt to collect the 35¢.
Upon consideration of all the testimony, the conflicting statements as to facts and the varying inferences and conclusions possible, it would seem the question was one best submitted to a jury. The trial judge submitted to the jury the question of whether or not the act committed by Menendez was done within the general scope of his authority. The jury determined this fact *194 in favor of the appellee. We find that many cases, probably the weight of the authorities, have followed this course. Illustrative is the case of Daniel v. Petersburg R. Co., 117 N.C. 592, 23 S.E. 327, 4 L.R.A., N.S. 485, where the Court said:
"* * * Was the agent's act in the course of his employment, and while about the master's business? No decisive test can be given, but in all cases the question whether the act was committed by the servant in the service of his employer, or for his own purpose is one for the jury, in view of all the circumstances. Wood, Mast. & S. 594; Hussey v. Railroad Co., 98 N.C. 34, 3 S.E. 923. In this case that question was submitted to the jury in the charge of the court, and by their verdict the fact that the agent was acting within the line of his employer's business is settled in the affirmative."
For similar decisions see Gomez v. Great Atlantic & Pacific Tea Co. (1934), 48 Ga. App. 398, 172 S.E. 750; Anderson v. Covert (1952), 193 Tenn. 238, 245 S.W.2d 770; Clark v. Americus Hardware Co. (1948), 77 Ga. App. 282, 47 S.E.2d 909; Kroger Company v. Andrews (6 Cir.1957), 240 F.2d 837.
Although there is a cogent and persuasive argument that Menendez acted for personal reasons entirely divorced from his duties and responsibilities as maitre'd, it is not impossible to attribute the anger, assault and battery to overzealousness in the protection of what he envisioned as his employer's interests.
It is noted that Menendez followed Petty to his motel, continuing the argument that originated in appellant's restaurant, ordering the motel clerk to put the bill on appellee's account, which was apparently in furtherance of his employer's interest.
We find no error in this record so we affirm the lower court.
SHANNON and WHITE, JJ., concur.