ERVIN, Justice
(dissenting) :
I cannot agree with the majority view that petitioner has failed to demonstrate *102 direct conflict sufficient to vest this Court with certiorari jurisdiction under Article V, Section 3(b)(3), Florida Constitution. On the contrary, petitioner has shown the result reached by the Third District Court of Appeal in Reina v. Metropolitan Dade County, reported at 285 So.2d 648, to be in clear conflict with another decision of that court, Forster v. Red Top Sedan Service (Fla.App.1972), 257 So.2d 95.
The facts in the instant case appear as follows: Petitioner boarded a bus owned and operated by respondent County to provide public passenger service. The bus was driven by respondent’s employee. On boarding the bus petitioner deposited 25 cents in the fare box, prompting an exchange of words with the driver about the correct fare which was 30 cents. Several blocks later petitioner sought to get off the bus by pulling a cord that signaled the driver to stop. When the driver did not stop, petitioner again pulled the cord. At that point the driver stopped the bus in the center of the street. Upon departing the bus and reaching the sidewalk, petitioner made what was alleged by respondents to be an obscene gesture at the driver who pulled the bus off to the side of the street. The driver then got off the bus and pursued petitioner on foot. Upon catching petitioner the driver beat and kicked him, resulting in petitioner’s hospitalization.
Petitioner brought an action against both the driver and respondent County for assault and battery, seeking to hold the County liable, inter alia, on the theory of respondeat superior. At the trial of petitioner’s action against the County, both parties moved for directed verdict; plaintiff-petitioner’s motion was denied, but the County’s motion was granted.
On appeal petitioner urged that the di■rected verdict was erroneously granted, contending that on the facts a jury might have lawfully found in his favor. Petitioner presented two theories of liability: the common-carrier passenger relationship and respondeat superior, relying principally upon Forster v. Red Top Sedan Service, supra; 34 A.L.R.2d 372. The District Court agreed with respondents that the facts in Forster were sufficiently distinguishable so as not to warrant application of the rules of law enunciated therein.
In Forster the Court was presented with a fact situation strikingly similar to the instant case. Plaintiffs in Forster were driving on an expressway in their car. A bus that had been behind them began to edge alongside plaintiffs’ car. The driver of the bus drove closer and closer to plaintiffs’ car, forcing it toward the median strip. The bus then pulled ahead in front of plaintiffs’ car and came to an abrupt stop, forcing plaintiffs to stop. The driver of the bus got out and went to plaintiffs’ car and pushed and struck both plaintiffs. It appears that the driver was prompted in his action by feeling that plaintiffs had caused him delay.
Plaintiffs in Forster then brought an action for assault and battery against both the driver and his employer, Red Top Sedan Service. At trial, the employer was granted a directed verdict. On appeal the District Court reversed, stating that there was a possibility that from the evidence presented a jury might lawfully find in favor of the plaintiffs, making a directed verdict at trial improper. The Third District Court said further in Forster that the plaintiffs could possibly have recovered under the doctrine of respondeat superior on the theory that the bus driver may have been motivated by a mistaken desire to further the interests of his employer in reacting as he did to the delay he attributed to plaintiffs and for which he assaulted them.
The same possibility exists in the instant case. This being so, the directed verdict in respondent’s favor was improper. But in refusing to reverse the trial court, the Third District Court relied upon an unrealistic distinction between the case before it and its previous Forster ruling. It found Forster to be inapposite, saying
*103 “[T]he conduct on the part of the injured party which was impeding the progress of the bus . . . was likely to continue. . . . The facts in the case are just the opposite. The passenger had alighted the bus and was across the street when he was attacked. His conduct could not have impeded the progress of the bus as it continued on its route.” 285 So.2d at 649. (Emphasis supplied.)
But this distinction is illusory and Forster was inversely misapplied. In Forster the assaulted parties had no ability to further impede the driver’s progress because impediments to the bus, if any, had ended. Forster quite clearly states that prior to the time the attack occurred, the bus had already passed the plaintiffs’ car and was ahead of it. Now the question arises: How could a bus be impeded in its movement by a car behind it? Obviously, it could not be. Thus the material facts in the two cases are on legal principle indistinguishable.
In Forster and in the instant case the assaults by the bus drivers were continuations of the altercations having inception in the operation of the buses. In each instance the driver took it upon himself to leave the bus following a prior encounter with another person involving an altercation concerning the operation of the bus or passenger service thereon, and assaulted the other person.
In each case the driver, selected for his fitness and placed in charge of the bus by employer, proceeded to inflict punitive action by way of assault upon another as a continuation of the altercation that arose from the operation of the bus. Merely because the assault in each affair took place off the bus itself — a mere physical matter of a few feet — is not conclusive insofar as the question of the liability of the employer is involved. The assault was the final act of each episode arising from the employed bus driver’s conduct and motivation concerning the operation of the bus. The fact that the assault occurred outside the bus on the street is not conclusive of the nonliability of employer. That feature is merely one factual element that a jury should consider.
The facts in this case are susceptible to a jury inference that the driver of the bus believed the petitioner had interfered with his operation of the bus by not depositing the correct fare; by annoying the driver by repeatedly pulling the bell cord and by insulting the driver by an improper gesture —which taken together motivated the driver to believe he was justified in taking punitive action upon petitioner, a passenger.
There was testimony that by reason of the foregoing things the driver was in an extremely agitated condition when he left the bus and grabbed petitioner, a 73-year-old retiree, and started beating him, yelling: “You are making me lose my time and getting me mad,” and “You are using my time and the bus company’s time.”
A factual inference might be drawn by a jury from this language of the driver that when he beat petitioner his action was so motivated because he considered petitioner had delayed him or wasted his time and his employer’s time in the performance of his bus employment duties.
Petitioner also urges conflict with Wackenhut Corporation v. Greene (Fla.App.1970), 238 So.2d 431; Sixty Six, Inc. v. Finley (Fla.App.1969), 224 So.2d 381; Dye v. Reichard (Fla.App.1966), 183 So.2d 863, and Columbia By the Sea, Inc. v. Petty (Fla.App.1963), 157 So.2d 190.
All four of these cases involved evidence that an employee was attempting — although overzealously — to further the employer’s interest at the time of an assault. Petitioner contends that the instant case similarly involved sufficient evidence relating to employee motivation in the course and scope of employment to raise jury questions and therein has conflicted with Greene, Finley, Dye and Petty.
In the Petty case, the assault occurred while a restaurant employee was trying to get a patron to pay his check. The other *104 three cases involved assaults by security guards and bouncers who were trying to evict unwanted persons from the employer’s premises.
The basic test of liability of a master for the tortious act, be it intentional or unintentional, of his servant, is whether the act causing the injury to a third person was done in the course and scope of the servant’s employment. Thus it has been held that if the employee, being engaged in the business of the employer, adopts methods which he deems necessary, expedient, or convenient, and the methods adopted prove intentionally harmful to others the employer may be held liable. E. g., Sixty Six, Inc. v. Finley, supra; Southern Life and Health Ins. Co. v. Smith (Fla.App.1969), 218 So.2d 784; Atlantic Coast Line R. Co. v. Burquest (Fla.App.1958), 101 So.2d 828, and Weiss v. Jacobson (Fla.1953), 62 So.2d 904.
The rule relating to intentional torts committed by the employee is similar to that applicable in the negligent tort context; that is, an employer will be held liable for even the intentional torts of his employee which are committed within the real or apparent scope of the master’s business. Foremost among the considerations for determining whether or not an intentional tort was committed within the course and scope of employment is the question of the employee’s motivation. While motivation has not been regarded as conclusive on the issue, it has been recognized in many cases as especially important and a factor which must be taken into consideration by the trier of fact along with the nature of the employment to determine the question of whether the servant was acting within the scope of his employment when he committed an assault. See Forster v. Red Top Sedan Service, Inc., supra; Wackenhut Corporation v. Greene, supra; Sixty Six, Inc. v. Finley, supra; and Dye v. Reichard, supra.
In certain cases the place or time where the assault was committed has been considered in relation to whether it was committed within the course of employment. An assault committed at a time when the business dealings have ended for which the person assaulted came upon the employer’s premises is generally considered not to have been committed by the servant while acting in the course of his employment. On the other hand, the mere fact that an assault was not committed by an employee on the premises of the employer but was committed after the person assaulted left the premises and was a continuation of an altercation having as its inception a disagreement arising while the parties were involved in the master’s business, the off-premises nature of the assault will not in itself absolve employer from respondeat superior liability — instead, the question becomes one for the jury. E. g., Forster v. Red Top Sedan Service, Inc., supra; Columbia By the Sea, Inc. v. Petty, supra; see also, Annot. 34 A.L.R. 372, and numerous cases cited thereat.
Columbia By the Sea, Inc. v. Petty was an action against a restaurant owner and his maitre d’ to recover compensatory and punitive damages for injuries sustained by a restaurant patron as the result of an assault and battery committed by the maitre d’. The appellee entered the appellant’s restaurant and ordered a $3.25 dinner specifying roquefort dressing for his salad. After finishing dinner, he was presented with a bill which included an extra charge of 35 cents for the roquefort dressing. The appellee objected to the charge and the appellant’s maitre d’ was summoned. A verbal altercation occurred between the maitre d’ and the appellee which culminated in the appellee’s leaving the restaurant and refusing to sign or pay the check, apparently intent on consulting with the manager of an adjacent motel. The maitre d’ followed the appellee to the motel office where the verbal altercation continued. Eventually, the maitre d’ struck the appellee on the back of the head with an ashtray.
In affirming a judgment in favor of the appellee against the appellant employer, *105 and rejecting the contention that the appellant was entitled to judgment as a matter of law on the question of course and scope of employment, the District Court of Appeal, Second District, stated:
“Although there is a cogent and persuasive argument that Menendez acted for personal reasons entirely divorced from his duties and responsibilities as maitre d’ it is not impossible to attribute the anger, assault and battery to overzealousness in the protection of what he envisioned as his employer’s interests.
“It is noted that Menendez followed Petty to his motel, continuing the argument that originated in appellant’s restaurant, ordering the motel clerk to put the bill on appellee’s account, which was apparently in furtherance of his employer’s interest.
“We find no error in this record so we affirm the lower court.”
Where the employer is a common carrier, consistent with the generally higher degree of care which attends a carrier-passenger context, an additional rule of law may be applicable to a given case. Unlike the normal master and servant case, as long as the carrier-passenger relationship exists and the contract of carriage is being performed, where an employee commits an assault upon the passenger questions relating to course and scope of employment and motivation of the employee are irrelevant to determining liability of the master. In such cases the master is liable even though the employee is serving only his own ends and is not acting in the course and scope of his employment. This rule prevails until the carrier-passenger relationship is terminated and questions relating to the termination of such status are normally held to be factual ones for the jury. Liability under this rule of law partakes of the nature of absolute liability predicated on an implied contractual duty to transport safely. Henderson v. Tarver (Fla.App.1960), 123 So.2d 369; Hall v. Seaboard Airline Ry. Co. (1921), 84 Fla. 9, 98 So. 151; Wright v. Georgia Southern & S. Ry. Co. (1913), 66 Fla. 510, 63 So. 909; see also, Annot. 53 A.L.R.2d 720.
I think it will be a grave mistake on the part of this Court to leave as a precedent a court decision that a public carrier can escape liability as a matter of law for its employee’s outrageous action of beating up its passengers under circumstances such as are presented in this case.
I would quash the decision of the District Court and remand for a new trial consistent with the rules of law outlined herein.
McCAIN, J., concurs.