DAUKSCH, Judge,
dissents.
I respectfully dissent.
The following is the substance of the original majority opinion, to which I adhere.
This is an appeal from a summary judgment in a suit against the county for alleged personal injuries inflicted by a deputy sheriff against appellant.
The alleged facts are that appellant was arrested, handcuffed and taken in by a deputy sheriff. While performing booking or other paperwork functions the deputy became angered by appellant’s abusive orations and accusations directed at him. The deputy beat up appellant. Appellant sued and the trial judge said the county, as employer of the deputy, was not liable because of governmental immunity.
At common law in England, and for a long time after the establishment of our republic, the king and the government were immune from civil liability for torts against the citizenry. Under our state constitution, section 31, Article X, the legislature has the power to waive sovereign immunity in such fashion as it deems right. By enacting section 768.28(9)(a), Florida Statutes (1993), the legislature did waive sovereign immunity in eases such as this, with the proviso that
The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed *160 while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property-
In his well-reasoned and persuasive judgment the trial judge recited the pertinent facts and found as a matter of law that the county was not liable for the alleged actions of the deputy. Following are abstracted pertinent portions of the judgment.
6. Plaintiff concurred with the “facts” presented by Defendant, COUNTY OF VOLUSIA, in its written Motion for Final Summary Judgment and supporting oral argument. Those “facts” were gleaned from the deposition testimony of Plaintiff, Morris H. McGhee, II:
(a) Page 60, Line 23
Question: Now, after Deputy Sheriff Hernlen arrested you and took you to the district office in DeLand, the office you described as underneath the courthouse, what is the next thing you remember after going into the office? Answer: Him turning this table around and him sitting — he would be sitting, like, at this end, and he told me to sit right here, and he started doing some paperwork in front of him, and I would be facing north there, and he would be facing east.
Question: Okay. Just a regular office? Answer: Just a table and had a telephone hanging behind him ...
(b) Page 62, Line 7
Answer: I believe he might have asked me some questions. I could be wrong, but I just remember him filling out some paperwork. I guess processing me or something.
(c) Page 62, Lines 10 through 23
Questions: Did you have conversations with him?
Answer: Just that we — he would ask me stuff, and then I said something back, and then I can remember telling him, you know, all your buddies or all you all come in my dad’s saw shop and to Mr. McGhee and me, you are, like hey, buddy-buddy and stuff like that, like force and then when they come in there, they are all good buddies and all like this, but when I get pulled over, I am a piece of dirt on the road. I told him that’s how it is. I said you don’t need to step foot in my saw shop. You don’t need to come in the door. You are not welcome. And he said you are threatening me? And he stands up and he lunges right at me and grabbed me and said you are threatening me? And then he just went crazy on me, started kicking me.
(d) Page 62, Line 24 through 25 — Page 63, Line 3
Question: What did you say when that happened?
Answer: Shoot, I started crying, begging him to quit. He said, “What are you? A big pussy? That’s all you are.” He just kept on and kept on, and there wasn’t nobody around that could help me.
(e) Page 63, Line 4 through Line 8
Question: All right. Where did he hit you?
Answer: He kicked me. He grabbed me by my throat and lunged me backwards, and I hit the floor, and I am handcuffed so I can’t cover my back. He is kicking me as hard as he can with his, whatever, boots on.
(f) Page 63, Line 9 through Line 17
Question: Did you have your hands cuffed in front of you or behind you? Answer: Yeah. In the front of me. Question: And you were laying on the floor?
Answer: Yes. I was laying on the floor. I couldn’t get back up. He was kicking me until—
Question: Where did he kick you?
Answer: He kicked me all in my back. He kicked up in here. He put his foot kicking—
(g) Page 63, Line 19 through 25 and Page 64, Line 1 through Line 2
Answer: Up to the back of my head. Blows to the back of my head.
Question: Your neck?
*161 Answer: Yes, sir. More up on my head behind my ears, rather.
Question: Directly in back.
Answer: Yeah.
Question: Your upper back?
Answer: No, sir. It was my lower back and ribs.
(h) Page 64, Line 3 through Line 7
Question: What did he say to you while he was doing that?
Answer: Just called me, like I said, a pussy and cry — -just hollering and screaming stuff like that. I was begging.
Question: He was hollering out loud? Answer: Yeah. He was hollering out loud.
(i) Page 64, Line 8 through 11
Question: Did anybody else come by, come by to see what was going on? Aiswer: There was nobody else around. It was just me and him.
(j) Page 64, Line 22 through 25, Page 65, Line 1
Question: Did he pick you up off the floor?
Answer: Up against the wall. Helped me get up against the wall, and I am handcuffed, sitting there crying, and then later on, after he got off the telephone, he helped me get up.
7. The Court finds for the purpose of the Final Summary Judgment in favor of the County of Volusia that the undisputed material facts are the hereinbefore recited “facts” of the deposition testimony of Plaintiff, Morris H. McGhee, II, and the following:
(a)George Tracy Hernlen was on duty as a Volusia County Deputy Sheriff at the time Plaintiff testified the incident occurred and that Deputy Hernlen arrested Plaintiff and had Plaintiff in custody and handcuffed in the deputy’s room, awaiting transport to a Volusia County Correctional institution.
(b) No deputy is hired to beat a nonviolent prisoner in handcuffs.
(c) Under the “facts” of Plaintiffs testimony the deputy turned away from the business of the employer when the deputy stopped his paperwork and turned upon the Plaintiff to beat him in response to Plaintiffs verbal taunting.
(d) There was no business of the County which George Tracy Hernlen could have been advancing when he stopped processing the prisoner’s paperwork and started beating the handcuffed prisoner.
It is my considered opinion that the statute was not meant to exempt the county from liability for torts committed by their employees if such were done while in the ordinary performance of other, proper, duties. That is to say, this deputy was performing his usual functions in a usual time, place and manner until he became enraged and set upon appellant. Conduct is only within the “scope of employment” within the meaning of the sovereign immunity statute if it is the type of conduct which the employee is hired to perform, it occurs substantially within the time and space limits authorized or required by the work to be performed, and conduct is activated at least in part by a purpose to serve the employer. Craft v. John Sirounis and Sons, Inc., 575 So.2d 795 (Fla. 4th DCA 1991). When differing inferences may be drawn concerning whether an employee is operating within the scope of employment, the question is generally for the jury. See Weiss v. Jacobson, 62 So.2d 904 (Fla.1953).
I have considered the case of Hennagan v. Dep’t of Highway Safety and Motor Vehicles, 467 So.2d 748 (Fla. 1st DCA 1985).[1] In that case a minor, alleging that she had been sexually abused by a highway patrolman after having been stopped on the pretext that she was under suspicion for theft, brought an action against the Department of Highway Safety and Motor Vehicles alleging negligence, false imprisonment, unlawful search, *162 and invasion of privacy. The trial court dismissed Counts I through IV (negligence, false imprisonment, unlawful search, and invasion of privacy) with prejudice, on the grounds that the officer’s actions were outside the course and scope of his employment. Final summary judgment was entered in favor of the Department of Highway Safety, and the plaintiff appealed. The district court reversed and held that the complaint alleged actions by the highway patrolman which might have been undertaken, in whole or in part, within the scope of his employment to further the Department’s interests, and those allegations sufficiently stated causes of action against the Department. The court found that although the complaint alleged a number of actions which could be found to exceed authority but not be outside the scope of employment as that term has been interpreted in the private and public sectors, that conduct could be within the scope of employment, even if unauthorized, if it is of the same general nature as that authorized or is incidental to the conduct authorized. Id. at 750. The court went on to explain:
In the instant case, it cannot be said, as a matter of law, that the acts alleged were or were not done in furtherance of Trooper Jones’s duties to apprehend a shoplifting suspect. That the acts of Jones resulted in a criminal offense does not preclude a determination that the acts were initiated in the course and scope of his employment and to serve the interests of the employer. 2 Fla.Jur.2d Agency and Employment § 220. Conduct is within the scope of employment if it occurs substantially within authorized time and space limits, and it is activated at least in part by a purpose to serve the master. The purpose of the employee’s act, rather than the method of performance thereof, is said to be the important consideration. 2 Fla.Jur.2d Agency and Employment § 213.
This court, in [Lay v.] Roux Laboratories, [379 So.2d 451] at 453 [(Fla. 1st DCA 1980) ] quoted with approval from Columbia by the Sea, Inc. v. Petty, 157 So.2d 190, 194 (Fla. 2d DCA 1963):
“Although there is a cogent and persuasive argument that Menendez [employee] acted for personal reasons entirely divorced from his duties and responsibilities as maitre’d, (sic) it is not impossible to attribute the anger, assault and battery to overzealousness in the protection of what he envisioned as his employer’s interest.”
Likewise, it is not impossible to attribute the alleged actions of Trooper Jones, at least in part, to misfeasance and/or over-zealousness in the performance of his official duties. On the more stringent test of summary judgment or trial, these matters may be resolved adversely to plaintiff, but the allegations of the complaint are sufficient to withstand motion to dismiss.
Id. at 751.
In Richardson v. City of Pompano Beach, 511 So.2d 1121 (Fla. 4th DCA 1987), rev. den., 519 So.2d 986 (Fla.1988), a plaintiff brought an action against the city seeking damages for a police officer’s use of excessive force, false arrest and detention. The trial court granted the city’s motion to dismiss claims against the city and the plaintiff appealed. The district court reversed, holding that section 768.28(9) (a) did not immunize the city from liability for intentional torts alleged to be committed by a police officer in the course and scope of his employment, which did not involve bad faith or malicious purpose, and were not committed in a manner exhibiting wanton and willful disregard of human rights, safety or property. The court explained:
The city believes, as did the trial judge, that intentional torts are within the pale of governmental immunity because it equates the word “intentional” with the words “wanton and willful.” We believe that the juxtaposition of the latter words with the remainder of the phrase “wanton and willful disregard” connotes conduct much more reprehensible and unacceptable than mere intentional conduct ...
The second amended complaint in question here alleges that the tortious acts occurred while the officer was acting within the scope of his employment and there are no allegations of bad faith, malicious purpose, or wanton and willful disregard of human rights, safety or property. Furthermore, the intentional torts involved herein do not *163 inherently or necessarily involve those elements which would activate immunity.
Id. at 1123-1124. See also Maybin v. Thompson, 514 So.2d 1129 (Fla. 2d DCA 1987) (issue of material fact as to whether officer was acting within scope of his employment as police officer precluded summary judgment in arrestee’s action alleging assault and battery, false arrest and imprisonment).
In considering the motion for summary judgment, the trial court found that Deputy Hernlen was on duty at the time of the incident, that the deputy turned away from the business of the employer when he stopped his paperwork to beat the appellant, and that “there was no business of the county which George Tracy Hernlen could have been advancing when he stopped processing the prisoner’s paperwork and started beating the handcuffed prisoner.” However, the beating occurred in the sheriffs department offices within the courthouse while appellant was under arrest and handcuffed, and during the time in which the deputy was filling out appellant’s paperwork. Although the sovereign immunity statute immunizes governmental entities from suit where their employees are acting outside the scope of their employment, in the instant case, the officer’s conduct appears to have been the type of conduct which he was hired to perform, it occurred substantially within the time and space limits authorized or required by the work to be performed, and it appears to have been activated at least in part by a purpose to serve the employer. Because there would appear to be sufficient evidence to raise the factual issue of whether Deputy Hernlen was acting within the scope of his employment, summary judgment is inappropriate. See Woodall v. City of Miami Beach, 599 So.2d 231 (Fla. 3d DCA 1992) (city not liable for any misconduct in initial encounter between bank customer and plain clothes police officer concerning their respective places in teller’s line where officer was cashing personal check, since officer was acting only for personal reasons and motivations; however, jury question was presented as to liability of municipality for allegedly tortious conduct in later arrest and imprisonment of plaintiff and use of force in doing so); cf. Craft v. John Sirounis and Sons, Inc., supra (participation of off-duty police officers in barroom brawl was not within scope of their employment, nor was their action in the interest of cities which employed them, and thus sovereign immunity statute precludes bar patron’s negligence suit against cities).
Because summary judgment is inappropriate for this personal injury case, it should be reversed.
PETERSON and THOMPSON, JJ., concur.

. Interestingly the majority en banc opinion has ignored this case, perhaps because it is in conflict with the case at bar, as acknowledged by the author of this en banc decision, who wrote the dissent in the panel decision. That dissent said "That holding is simply wrong and should be rejected by this court.” McGhee v. Volusia County, 19 Fla.L.Weekly D2240 (Fla. 5th DCA Oct. 21, 1994) (Cobb, J., dissenting).